UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------------X
JUSTIN SHERWOOD,                                                   **COMPLAINT**

                               Plaintiff,

        -against-                                                         **Index No.**

THE CITY OF NEW YORK, NEW YORK CITY POLICE            **PLAINTIFF DEMANDS**
DEPARTMENT ("NYPD") DEPUTY INSPECTOR ADEEL S.         **A TRIAL BY JURY**
RANA, AND NYPD OFFICER JOHN MADERA,

                               Defendants.
---------------------------------------------------------------------------------X

Plaintiff, JUSTIN SHERWOOD, by his attorney, Gideon Orion Oliver, hereby complains of the Defendants, upon information and belief, as follows:

## PARTIES

1. At all relevant times mentioned herein, Plaintiff Justin Sherwood (Mr.; he/him) was a resident of Kings County in the City and State of New York.

2. At all relevant times mentioned herein, Defendant City of New York (the "City") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

3. At all relevant times hereinafter mentioned, Defendant Deputy Inspector Adeel S. Rana was the Commanding Officer of the NYPD's 84th Precinct. As such, he had responsibility to supervise subordinate NYPD members, including Defendant NYPD Officer John Madera.

4. At all relevant times hereinafter mentioned, Defendant NYPD Officer John Madera was assigned to the NYPD's 84th Precinct.

5. At all relevant times hereinafter mentioned, Defendant City employed Defendants Rana and Madera (collectively, the "Individual Defendants") within the NYPD.

6. At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

7. Each and all of the acts and omissions of the Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

8. At all relevant times, Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

9. Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

10. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

11. Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

12. Defendants Rana and Madera are sued herein in their official and individual capacities.

## JURISDICTION AND VENUE

13. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, the First Amendment to the United States Constitution, and New York law.

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

15. Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.,* in the Eastern District of New York, where the Defendant City of New York resides, and where the majority of the actions complained of herein occurred.

## ON PLAINTIFF'S STATE LAW CLAIMS

16. Plaintiff served a Notice of Claim on the Office of the Comptroller of the City of New York on December 9, 2022.

17. By letter dated December 9, 2022, the Comptroller acknowledged Plaintiff's claim.

18. On December 9, 2022 Plaintiff initiated a proceeding in New York State Supreme Court seeking leave to file a notice of claim out of time, which has not yet been assigned an index number.

19. This action has been initiated within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York law.

## RELEVANT FACTS

20. At all relevant times hereinafter mentioned, Plaintiff Justin Sherwood reported individuals who park illegally in bike lanes, sidewalks, and bus stops in his neighborhood,

downtown Brooklyn, to the City through its 311 service.

21. Upon information and belief, many of the individuals Mr. Sherwood reports are affiliated with the NYPD or other City agencies.

22. On September 10, 2021, Mr. Sherwood observed many cars parked on the Schermerhorn Street bike lane and/or sidewalk.

23. Mr. Sherwood took photographs of those conditions and submitted each vehicle as a separate complaint to 311.

24. Mr. Sherwood's first complaint was received by 311 at 2:27pm.

25. By 2:42pm, Mr. Sherwood had submitted 8 such complaints.

26. All of the 311 complaints were eventually closed with the following status: "The Police Department responded to the complaint and determined that police action was not necessary."

27. At 2:42pm, Mr. Sherwood received a phone call from a blocked number.

28. During this phone call a man falsely identified himself as Josh Hader, a New York City 311 operator.

29. Upon information and belief, the caller was in fact Defendant NYPD Officer John Madera.

30. On the call, Defendant Madera said in substance that since Mr. Sherwood was submitting multiple complaints, he might be barred from submitting complaints to 311 altogether going forward.

31. Defendant Madera also mentioned the location Mr. Sherwood was complaining about was in front of a NYPD Transit Precinct.

32. Mr. Sherwood made public statements about this incident, including to Julianne

4

Cuba, who reported about it in *StreetsblogNYC* on October 18 and 19, 2021.

33. At that time, the NYPD and the City's Civilian Complaint Review Board ("CCRB") reportedly both stated they were investigating the incident. *See* Julianne Cuba, "BAD COP, BAD COP: NYPD Threatens Tipster for Filing 311 Complaints About Illegal Parking", *StreetsblogNYC,* October 18, 2021. Available online at https://nyc.streetsblog.org/2021/10/18/bad-cop-bad-cop-nypd-threatens-tipster-for-filing-311-complaints-about-illegal-parking/; Julianne Cuba, "AWFULLY IRONIC: NYPD Threatens Tipster After Streetsblog Story About Prior Harassment Over 311 Complaints About Illegal Parking", *StreetsblogNYC*, October 19, 2021. Available online at https://nyc.streetsblog.org/2021/10/19/irony-alert-nypd-threatens-tipster-after-streetsblog-story-about-prior-harassment-over-311-complaints-about-illegal-parking/.

34. On October 22, 2021, New York City Council Member Stephen Levin informed Mr. Sherwood that he had spoken about the alleged police harassment of Mr. Sherwood with Defendant Rana, Commanding Officer of the NYPD's 84th Precinct, and that Defendant Rana stated in sum that "he takes it very seriously but that he didn't think that it was any of the officers under his command."

35. On or about October 21, 2021, Mr. Sherwood contacted the NYPD's Internal Affairs Bureau ("IAB") to complain about the incident.

36. Mr. Sherwood learned the IAB had assigned the matter Case # 21-23530.

37. On October 21, 2021, Mr. Sherwood e-mailed the IAB a recording of the phone call.

38. Mr. Sherwood heard nothing from the IAB between October of 2021 and July of 2022.

5

39. At some time between 9:30 and 10:00pm on July 26, 2022, a man claiming to be a NYPD member who said his last name was Townsend and that he was from the IAB visited Mr. Sherwood's apartment building and said he wanted to speak with Mr. Sherwood about a complaint he had made about a "prank phone call."

40. That person also said his partner had called Mr. Sherwood.

41. Mr. Sherwood saw a missed call from a 917 number.

42. Mr. Sherwood informed Defendant Doe they would need to make an appointment to speak with him.

43. On July 29, 2022, Mr. Sherwood's counsel called the 917 number in question.

44. No voicemail was set up, and nobody from the NYPD returned the call.

45. Assuming those people were NYPD IAB members, Mr. Sherwood has not heard from the IAB since.

46. On November 3, 2021, Mr. Sherwood heard from the City's Department of Investigation ("DOI") regarding the incident.

47. Mr. Sherwood subsequently spoke with the DOI related to their investigation.

48. Mr. Sherwood is not aware of the status of the DOI's investigation.

49. Mr. Sherwood also reported the incident to the City's CCRB himself on March 8, 2022, and cooperated fully with the CCRB's investigation.

50. In a letter dated November 10, 2022, the CCRB informed Mr. Sherwood that it had substantiated allegations of discourtesy, abuse of authority, and making a false statement to the CCRB against Defendant Madera, related to the incident.

51. As a result, the CCRB has recommended both Command Discipline and Charges and Specifications be brought against Defendant Madera.

6

52. Defendant Madera's harassment of and retaliation against Mr. Sherwood has injured Mr. Sherwood, including, but not limited to, by limiting and casting a chill on Mr. Sherwood's ability and willingness to continue to report individuals who park illegally in bike lanes, sidewalks, and bus stops, and caused him to suffer emotional distress.

53. The actions of all Defendants named herein were intended to intimidate Plaintiff and prevent him from exercising his First Amendment rights, and to file truthful complaints about illegal activity – including illegal *police* activity - in general.

54. At no time the Individual Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the heretofore conduct engaged in by their fellow officers.

## FIRST CLAIM FOR RELIEF

### First Amendment Retaliation

### Against the Individual Defendants

### Pursuant to 42 U.S.C. Section 1983 for violating Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution

55. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

56. Defendant Madera retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment.

57. Defendant Rana knew or should have known about Defendant Madera's misconduct and failed to intervene, investigate, and/or discipline Defendant Madera.

58. Defendants engaged in the acts and omissions complained of herein because of Plaintiff's protected speech and/or conduct.

7

59. Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

60. Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

61. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

62. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

### Municipal Liability

### Against Defendant City of New York

*Pursuant to 42 U.S.C. 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiff's Rights Under the First Amendment to the United States Constitution*

63. Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

64. All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to customs, practices, and usages of the NYPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City, and Defendant City's deliberate indifference to Plaintiff's rights secured by the First Amendment to the United States Constitution, as evidenced by the City's failures, and the failures of the City's

8

policymaking agents, to train, supervise, and discipline NYPD officers, despite knowledge of their wrongful acts, as described herein and otherwise.

65. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

66. Defendant City of New York had actual or constructive knowledge that there was inadequate training, supervision, and supervision over and/or within the NYPD with respect to its members' abuse of their authority related to responding to 311 complaints about illegally parked vehicles, including vehicles owned by NYPD members, and with regard to the need to refrain from retaliating against the people who lodge such complaints.

67. Despite ample notice of that inadequate training, supervision, and discipline, Defendant City took no steps to ensure that reasonable and appropriate types and levels of training, supervision, investigation, and discipline were in place to reasonably ensure that NYPD members would respond appropriately to 311 complaints about illegally parked vehicles, including vehicles belonging to NYPD members, and refrain from retaliating against the people who lodge them.

68. Defendant City has deliberately and intentionally chosen not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent training, supervision, investigation, and discipline, a NYPD policy, practice, and custom of ignoring or otherwise failing to respond appropriately to 311 complaints about illegally parked vehicles, and/or of retaliating against people who lodge them.

69. The acts complained of herein are a direct and proximate result of the failure of the City and the NYPD properly to select, train, supervise, investigate, and discipline NYPD members.

70. That failure properly to select, train, supervise, investigate, and discipline NYPD members constitutes gross and deliberate indifference to unconstitutional conduct by those NYPD members.

71. The City has not only tolerated, but actively fostered, a lawless atmosphere within the NYPD on this front.

72. The City has exhibited deliberate indifference to the reality that the inadequate types and levels of training, supervision, investigation, and discipline would lead to the violation of individuals' constitutional rights in general, and caused the violation of the Plaintiff's rights in particular.

73. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

### THIRD CAUSE OF ACTION

### Violations of New York State Law

### Against All Defendants

*Pursuant to New York State Common Law and the New York State Constitution*

74. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

75. The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials,

and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

76. Defendants' acts and omissions constituted the following violations of New York State common law and/or the New York State Constitution:

    a. *Prima facie* tort;

    b. Intentional infliction of emotional distress;

    c. Negligent infliction of emotional distress;

    d. Negligent hiring, screening, retention, supervision, and/or training; and

    e. Violation(s) of Claimant's rights pursuant to the Constitution of the State of New York, including, but not limited to, Article I, Sections 8 (freedom of speech and press), 9 (right to assemble and petition), and/or 11 (equal protection) thereof.

77. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

i. Actual and punitive damages against the Individual Defendants in an amount to be determined at trial;

ii. Actual damages in an amount to be determined at trial against the City of New York;

iii. Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988, and New York common law; and

iv. Such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
December 9, 2022

**GIDEON ORION OLIVER**

_____
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

J. Remy Green
Elena L. Cohen
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com