UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
JUSTIN SHERWOOD,                                                             **COMPLAINT**

                         Plaintiff,

               -against-                                                     **Index No.**

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT ("NYPD") DEPUTY INSPECTOR ADEEL S.
RANA, NYPD DETECTIVE SAMANTHA STURMAN, NYPD
OFFICER ARTHUR STURMAN, AND NYPD OFFICER TIAGOM
REIS,

                         Defendants.
------------------------------------------------------------------------------X

        Plaintiff, JUSTIN SHERWOOD, by his attorneys, Gideon Orion Oliver, and Cohen&Green PLLC, hereby complains of the Defendants, as follows:

**PARTIES**

        1.     At all relevant times mentioned herein, Plaintiff Justin Sherwood (Mr.; he/him) was a resident of Kings County in the City and State of New York.

        2.     At all relevant times mentioned herein, Defendant City of New York (the "City") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

        3.     At all relevant times hereinafter mentioned, upon information and belief, Defendant NYPD Officer Tiagom Reis was a NYPD member.

        4.     At all relevant times hereinafter mentioned, Defendant Deputy Inspector Adeel S. Rana was the Commanding Officer of the NYPD's 84th Precinct. As such, he had responsibility to supervise subordinate NYPD members.

5. At all relevant times hereinafter mentioned, upon information and belief, Defendant NYPD Detective Samantha Sturman was assigned to the NYPD's 84th Precinct.

6. At all relevant times hereinafter mentioned, upon information and belief, Defendant NYPD Officer Arthur Sturman was assigned to the NYPD's Field Training Unit.

7. At all relevant times hereinafter mentioned, Defendant City employed Defendants Reis, Rana, Sturman, and Sturman (collectively, the "Individual Defendants") within the NYPD.

8. At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

9. Each and all of the acts and omissions of the Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

10. At all relevant times, Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

11. Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

12. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

13. Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

14. The Individual Defendants are sued herein in their individual capacities.

## JURISDICTION AND VENUE

15. Plaintiff brings this action pursuant to 42 USC §§ 1983 and 1988, the First and Fourteenth Amendments to the United States Constitution, and New York law.

16. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

17. Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.,* in the Eastern District of New York, where a number of the Defendants reside, and where the majority of the actions complained of herein occurred.

## ON PLAINTIFF'S STATE LAW CLAIMS REGARDING THE OCTOBER 18, 2021 INCIDENT

18. Plaintiff served a Notice of Claim on the Office of the Comptroller of the City of New York related to the October 18, 2021 incident on January 16, 2023.

19. Also on January 16, 2023, Plaintiff initiated a proceeding in New York State Supreme Court seeking leave to file a notice of claim related to the October 18, 2021 incident out of time, which has not yet been assigned an index number.

20. This action has been initiated within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York law related to the related to the October 18, 2021 incident.

## RELEVANT FACTS

21. At all relevant times hereinafter mentioned, Plaintiff Justin Sherwood reported individuals who park illegally in bike lanes, sidewalks, and bus stops in his neighborhood, downtown Brooklyn, to the City through its 311 service.

22. Upon information and belief, many of the individuals Mr. Sherwood reports are affiliated with the NYPD or other City agencies.

23. In several cases, City and/or NYPD employees have responded to some of Mr. Sherwood's reports with harassment and/or retaliation.

24. For example, after making such reports on August 13th, August 26th, September 10th, and October 18th, 2021, Mr. Sherwood received retaliatory texts and/or phone calls, including from NYPD members.

25. On August 13th, the caller identified himself as a NYPD member, but refused to give his name and hung up.

26. Mr. Sherwood made a complaint about that August 13, 2021 incident to the CCRB.

27. In an October 20, 2022 letter, the CCRB informed Mr. Sherman that it had substantiated Abuse of Authority and Discourtesy allegations related to Officer Reis and the August 13, 2021 incident, and recommended "Command Discipline B."

28. In the second incident, on August 26, 2021, a person who identified herself as "Det. Sturman," called Mr. Sherwood and offered to set up a meeting between him and a NYPD

4

Neighborhood Coordination Officer ("NCO").

29. After Mr. Sherwood declined, the two argued, and Det. Sturman ended the call by yelling, "Stop calling, dickhead!"

30. Nr. Sherwood made a complaint about that August 26, 2021 incident to the CCRB.

31. In a November 9, 2022 letter, the CCRB informed Mr. Sherwood that it had substantiated allegations of Offensive Language and Discourtesy as to Detective Samantha Sturman related to the complaint, and recommended "Command Discipline A."

32. Additionally, on September 10, 2021, Mr. Sherwood received a call from a NYPD member pretending to be a 311 operator.

33. That September 10th call and events related to it are the subject of litigation pending in the United States District Court for the Eastern District of New York under the caption *Justin Sherwood v. City of New York, et al,* 22-cv-07505 (BMC).

34. On the morning of October 18, 2021, *StreetsblogNYC* reported about the August 13th, August 26th, and September 10th, 2021 incidents. *See* Julianne Cuba, "BAD COP, BAD COP: NYPD Threatens Tipster for Filing 311 Complaints About Illegal Parking", *StreetsblogNYC*, October 18, 2021. Available online at https://nyc.streetsblog.org/2021/10/18/bad-cop-bad-cop-nypd-threatens-tipster-for-filing-311-complaints-about-illegal-parking/ (last accessed January 16, 2023).

35. Shortly thereafter on October 18, 2021, Mr. Sherwood saw many cars parked on the 300 Block of Jay Street bike lane and/or sidewalk, in violation of City signage.

36. A number of them displayed various City and/or other governmental parking placards.

37. Mr. Sherwood took photographs of those illegally parked vehicles and submitted separate complaints to the City via its 311 service as to each vehicle.

38. The City received the first such 311 complaint from Mr. Sherwood at 1:33pm.

39. By 1:50pm, Mr. Sherwood had submitted 11 such complaints.

40. All of the 311 complaints were eventually closed with the following status: "The Police Department responded to the complaint and with the information available observed no evidence of the violation at that time."

41. At 1:52pm, Mr. Sherwood received a text from 631-685-5448 - a number unknown to him - that said: "Keep fucking around."

42. Mr. Sherwood later determined the text had been sent through a service called TextNow, and that TextNow likely had the identity of, and other information about, the sender.

43. Throughout the afternoon of October 18, 2021, Mr. Sherwood received around eight calls from a blocked number. Each time he declined the call, a new call would start.

44. After receiving the 1:52pm text message, Mr. Sherwood answered a blocked call. The caller identified himself as "Lieutenant Charles" and – as Det. Sturman had on August 26, 2021 - asked Mr. Sherwood to meet with an NCO to discuss his concerns.

45. When Mr. Sherwood declined and asked if Lt. Charles had sent the text message, Lt. Charles said no, and recommended Mr. Sherwood call 911 to report the incident.

46. The same day, October 18, 2021, Mr. Sherwood reported the harassing text message and calls to the New York City Civilian Complaint Review Board ("CCRB").

47. The CCRB assigned complaint #202106302 to Mr. Sherwood's October 18, 2021 complaint.

48. Also on October 18, 2021, Mr. Sherwood communicated with New York City

6

Council Member Stephen Levin about the harassing text.

49. Upon information and belief, between October 18, 2021 and October 22, 2021, Council Member Levin contacted NYPD Deputy Inspector Adeel S. Rana – the Commanding Officer of the NYPD's 84th Precinct, where, upon information and belief, Detective Sturman was assigned - about the October 18, 2021 and previous NYPD harassment of Mr. Sherwood.

50. On October 22, 2021, Council Member Levin informed Mr. Sherwood that Deputy Inspector Rana had "responded that he takes it very seriously but that he didn't think that it was any of the officers under his command" but that if it is one of his officers Mr. Sherwood should "'rest assured strict discipline actions will be taken.'"

51. On October 19, 2021, *StreetsblogNYC* published an article about the October 18, 2021 harassing text message and calls. *See* Julianne Cuba, "AWFULLY IRONIC: NYPD Threatens Tipster After Streetsblog Story About Prior Harassment Over 311 Complaints About Illegal Parking", *StreetsblogNYC*, October 19, 2021. Available online at https://nyc.streetsblog.org/2021/10/19/irony-alert-nypd-threatens-tipster-after-streetsblog-story-about-prior-harassment-over-311-complaints-about-illegal-parking/ (last accessed January 16, 2023).

52. Also on October 19, 2021, Mr. Sherwood communicated with then-Council Member-Elect Lincoln Restler about the text message. Mr. Restler urged Mr. Sherwood to call 1-800-PRIDE-PD, and Mr. Sherwood did so that day.

53. Also in October of 2021, Mr. Sherwood filed a complaint regarding the incident with the City's Department of Investigation ("DOI").

54. In an October 20, 2021 letter, the CCRB informed Mr. Sherwood it had determined it did not have jurisdiction over part of Mr. Sherwood's complaint – to the extent that

part of the complaint involved allegations of corruption and/or acts of a criminal nature - and that the CCRB was referring parts of Mr. Sherwood's October 18, 2021 complaint having to do with those allegations to the NYPD's Internal Affairs Bureau ("IAB").

55.  Also on October 20, 2021, Mr. Sherwood spoke with a NYPD Officer Abreu regarding his October 19, 2021 call to 1-800-PRIDE-PD. Officer Abreu took information about Mr. Sherwood's complaint, but otherwise appeared to respond with skepticism or disbelief.

56.  On November 3, 2021, a DOI representative told Mr. Sherwood that the complaint he had filed with the DOI had been forwarded to the IAB. On November 18, 2021, a DOI representative informed Mr. Sherwood that the IAB had assigned Log No. 2021-23416 and that the complaint was "being handled by the 84th Precinct with a current status of open."

57.  Mr. Sherwood has never heard from the IAB about his complaint or any aspect of the matter.

58.  On November 3, 2021, a representative of the DOI informed Mr. Sherwood the DOI had learned about the October 18, 2021 incident and Mr. Sherwood's complaint through the October 19, 2021 *StreetsblogNYC* article.

59.  Mr. Sherwood spoke with the DOI and provided all of the information the DOI requested.

60.  On December 7, 2021, Mr. Sherwood e-mailed the DOI and IAB asking why the DOI had not issued a subpoena to TextNow to identify the sender of the October 18, 2021 text message.

61.  Although Mr. Sherwood made a number of inquiries in 2021 and 2022 to the DOI about the status of its investigation, the DOI has not provided Mr. Sherwood with any information about its investigation or its outcome.

8

62. On October 18, 2021, the CCRB assigned a new case number, #202106307, to investigate the parts of Mr. Sherwood's October 18, 2021 complaint that it had not referred to the IAB. Mr. Sherwood has cooperated fully with the CCRB in connection with its investigation into Complaint #202106307, including by sending screenshots and other evidence to the CCRB, and by giving an interview to the CCRB on October 20, 2021.

63. In a letter dated December 19, 2022, the CCRB informed Mr. Sherwood that it had substantiated two allegations each of Abuse of Authority and two allegations each of Discourtesy against NYPD Officer Arthur Sturman and NYPD Detective Samantha Sturman related to Mr. Sherwood's October 18, 2021 complaint (Complaint #202106307).

64. The CCRB determined that each NYPD member had spoken discourteously to Mr. Sherwood and threated Mr. Sherwood with the use of force, and recommended that each Sturman face "Command Discipline B" as a result.

65. Defendants' harassment of and retaliation against Mr. Sherwood has injured Mr. Sherwood, including, but not limited to, by limiting and casting a chill on Mr. Sherwood's ability and willingness to continue to report individuals who park illegally in bike lanes, sidewalks, and bus stops, and caused him to suffer emotional distress.

66. The actions of all Defendants named herein were intended to intimidate Plaintiff and prevent him from exercising his First Amendment rights, and to file truthful complaints about illegal activity – including illegal *police* activity - in general.

67. At no time the Individual Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the heretofore conduct engaged in by their fellow officers.

## FIRST CLAIM FOR RELIEF

9

First Amendment Retaliation

Against the Individual Defendants

Pursuant to 42 U.S.C. Section 1983 for violating Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution

68. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

69. The Individual Defendants retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment.

70. Defendant Rana knew or should have known about the other Individual Defendants' misconduct and failed to intervene, investigate, and/or discipline them.

71. Defendants engaged in the acts and omissions complained of herein because of Plaintiff's protected speech and/or conduct.

72. Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

73. Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

74. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

75. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**SECOND CLAIM FOR RELIEF**

Municipal Liability

Against Defendant City of New York

*Pursuant to 42 U.S.C. 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiff's Rights Under the First Amendment to the United States Constitution*

76. Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

77. All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to customs, practices, and usages of the NYPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City, and Defendant City's deliberate indifference to Plaintiff's rights secured by the First Amendment to the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers, despite knowledge of their wrongful acts, as described herein and otherwise.

78. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

79. Defendant City of New York had actual or constructive knowledge that there was inadequate training, supervision, and supervision over and/or within the NYPD with respect to its members' abuse of their authority related to responding to 311 complaints about illegally parked vehicles, including vehicles owned by NYPD members, and with regard to the need to refrain from retaliating against the people who lodge such complaints.

80. Despite ample notice of that inadequate training, supervision, and discipline, Defendant City took no steps to ensure that reasonable and appropriate types and levels of

11

training, supervision, investigation, and discipline were in place to reasonably ensure that NYPD members would respond appropriately to 311 complaints about illegally parked vehicles, including vehicles belonging to NYPD members, and refrain from retaliating against the people who lodge them.

81. Defendant City has deliberately and intentionally chosen not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent training, supervision, investigation, and discipline, a NYPD policy, practice, and custom of ignoring or otherwise failing to respond appropriately to 311 complaints about illegally parked vehicles, and/or of retaliating against people who lodge them.

82. The acts complained of herein are a direct and proximate result of the failure of the City and the NYPD properly to select, train, supervise, investigate, and discipline NYPD members.

83. That failure properly to select, train, supervise, investigate, and discipline NYPD members constitutes gross and deliberate indifference to unconstitutional conduct by those NYPD members.

84. The City has not only tolerated, but actively fostered, a lawless atmosphere within the NYPD on this front.

85. The City has exhibited deliberate indifference to the reality that the inadequate types and levels of training, supervision, investigation, and discipline would lead to the violation of individuals' constitutional rights in general, and caused the violation of the Plaintiff's rights in particular.

86. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

## THIRD CAUSE OF ACTION

### Violations of New York State Law

### Against All Defendants

*Pursuant to New York State Common Law and the New York State Constitution*

87. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

88. The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

89. Defendants' acts and omissions constituted the following violations of New York State law and/or the New York State Constitution:

    a. *Prima facie* tort;

    b. Intentional infliction of emotional distress;

    c. Negligent infliction of emotional distress;

    d. Negligent hiring, screening, retention, supervision, and/or training;

    e. New York Civil Rights Law § 79-P (the New Yorker's Right to Monitor Act); and

  f. Violation(s) of Claimant's rights pursuant to the Constitution of the State of New York, including, but not limited to, Article I, Sections 8 (freedom of speech and press), 9 (right to assemble and petition), and/or 11 (equal protection) thereof.

90. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights, caused Plaintiff emotional injury, and/or otherwise damaged and injured Plaintiff.

## DEMAND FOR A JURY TRIAL

91. Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

i. Actual and punitive damages against the Individual Defendants in an amount to be determined at trial;

ii. Actual damages in an amount to be determined at trial against the City of New York;

iii. Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988, New York Civil Rights Law § 79-P, and New York common law; and

iv. Such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
   January 16, 2023

                    **GIDEON ORION OLIVER**

                    _____
                    277 Broadway, Suite 1501

14

New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

J. Remy Green
Elena L. Cohen
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com