UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JUSTIN SHERWOOD,

                Plaintiff,

   - against -

THE CITY OF NEW YORK, et al.,

             Defendants.

-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO PENDING PARTIAL MOTION TO DISMISS (ECF 31-32)**

22-cv-7505 (BMC)


**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY  10007
Gideon@GideonLaw.com
(718) 783-3682

J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre St., Suite 216
Ridgewood, New York 11385
Remy@FemmeLaw.com
(929) 888-9480


*Co-Counsel for Plaintiff Justin Sherwood*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................................i

TABLE OF AUTHORITIES ...............................................................................................iii

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF FACTS .......................................................................................................1

ARGUMENT ...............................................................................................................................1

I.     Defendants' Argument for Dismissal of the First Amendment Retaliation Claim Against Defendant Tiagom Reis Fails. ....................................................................................................1

  A.     Mr. Sherwood engaged in protected conduct. ............................................................3

  B.     The FAC adequately pleads retaliatory motive. .........................................................3

  C.     The FAC adequately pleads that Defendant Reis's conduct caused a chill and First Amendment injury. .....................................................................................................................6

    i.     Dispositively, the harm here is the kind of harm that the Second Circuit has said may supplant any requirement to show actual chill. ..........................................................8

    ii.     Defendants, including Defendant Reis, injured Plaintiff. ....................................10

    iii.     Defendants' actions, including Defendant Reis's, are — by design — and, in any event, amount to, a blizzard of chill. ..........................................................................12

  D.     Defendants' actions also constitute a burden on First Amendment rights, standing alone.12

  E.     If the Court grants the motion as to Defendant Reis, it should dismiss without prejudice.14

II.   The FAC States a Municipal Liability Claim. ................................................................14

i

A.      The FAC sufficiently pleads that City agents engaged in an informal practice that policymaking officials were aware of at all relevant times...................................................................15

    i.      The FAC sufficiently pleads that the Individual Defendants engaged a practice of harassing and/or retaliating against Mr. Sherwood and, more, broadly, that other NYPD members engaged in a practice of harassing and/or retaliating against others, for making 311 complaints about illegally parked NYPD and other vehicles. ...........................................................16

    ii.     The FAC alleges instances of constitutional violations against not just Mr. Sherwood, but several others. ...................................................................................................................19

    iii.    The FAC adequately pleads that none of the Individual Defendants have received any discipline or consequences as a result of their harassment of and/or retaliation against Mr. Sherwood, and includes sufficient facts based on which a reasonable jury could find that the City's investigations into the Individual Defendants' harassment of and/or retaliation against Mr. Sherwood were inadequate. ...................................................................................20

B.      The FAC adequately pleads both failures to train and supervise...........................................21

    i.      The FAC adequately pleads the requisite "deliberate indifference."......................................22

    ii.     The FAC adequately pleads Defendant City's failure to train...............................................23

    iii.    The FAC adequately pleads Defendant City's failure to supervise.....................................24

CONCLUSION............................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amnesty America v. Town of West Hartford,*
  361 F.3d 113 (2d Cir. 2004) ........................................................................... 22, 24

*Bart v. Telford,*
  677 F.2d 622 (7th Cir. 1982) ............................................................................ 8, 12

*Bradley v City of NY,*
  2007 US Dist LEXIS 7811 (SDNY Jan. 25, 2007) ........................................... 15, 17

*Campo v City of NY,*
  2022 US Dist LEXIS 60288, No. 19-CV-04364 (NGG) (SJB) (EDNY Mar. 31,
  2022) ................................................................................................................... 5

*Matter of Carr v de Blasio,*
  70 Misc 3d 418 (Sup Ct, NY County 2020) ....................................................... 21

*City of Canton v. Harris,*
  489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) ................................. 24

*Connick v. Thompson,*
  131 S.Ct. 1350 (2011) ........................................................................................ 23

*Cox v. Warwick Valley Cent. Sch. Dist.,*
  654 F.3d 267, 272 (2d Cir. 2011). ...................................................................... 7

*Crawford–El v. Britton,*
  951 F.2d 1314 (D.C. Cir. 1991) ......................................................................... 8

*Cummings v Missouri,*
  4 Wall [71 US] .................................................................................................... 13

*Curley v. Village of Suffern's,*
  268 F.3d 65, 73 (2d Cir. 2001) .......................................................................... 9

*Dabney v Maddock,*
  2011 US Dist LEXIS 153935, No. 9:10-CV-0519 (GTS) (DEP) (NDNY Nov.
  29, 2011) ............................................................................................................ 11

*Di Lello v Coviello,*
  2022 US Dist LEXIS 8641, No. 20 ...................................................................... 11

*Dixon v. Brown,*
  38 F.3d 379 (8th Cir. 1994) ............................................................................... 9

*Dorsett v. Cty. of Nassau,*
　732 F.3d 157 (2d Cir. 2013) ..................................................................................... 2, 9, 12

*Dougherty v Town of N. Hempstead Bd. of Zoning Appeals,*
　282 F3d 83 (2d Cir 2002) ............................................................................................... 3, 5

*Edrei v City of NY,*
　254 F Supp 3d 565 (SDNY 2017), *aff'd,* 892 F.3d 525 (2d Cir. 2018) ........................... 22

*Gandhi v NY State Unified Ct. Sys.,*
　2021 US Dist LEXIS 183938, No. 01:20-CV-0120 (LEK) (NDNY Sep. 27, 2021) ........................ 4

*Gilbert v Stony Brook Univ.,*
　2022 US Dist LEXIS 24355 (EDNY Feb. 9, 2022) ..................................................... 1, 7

*Gill v Pidlypchak,*
　389 F3d 379 (2d Cir 2004) ...................................................................... 8, 9, 10, 12

*Healy v. James,*
　408 U.S. 169 (1972) ............................................................................................... 12, 13

*Keenan v. Tejeda,*
　290 F.3d 252 (5th Cir. 2002) .......................................................................................... 8

*Kerman v City of NY,*
　261 F3d 229 (2d Cir 2001) ........................................................................................... 11

*Lacey LLC v. Maricopa County,*
　693 F.3d 896 (9th Cir. 2012) (en banc) ........................................................................ 8

*LaVertu v Town of Huntington,*
　2014 US Dist LEXIS 165701, No. 13-CV-4378 (SJF)(SIL) (EDNY Oct. 7, 2014) ..................... 8, 9

*Lucente v County of Suffolk,*
　980 F3d 284 (2d Cir 2020) .......................................................................................... 16

*Marlin v City of NY,*
　2016 US Dist LEXIS 122426 (SDNY Sep. 7, 2016) ...................................................... 15

*Marom v City of NY,*
　2016 US Dist LEXIS 28466, No. 15-cv-2017 (PKC) (SDNY Mar. 7, 2016) ...................... 4

*Monell v. N.Y. City Dep't of Social Servs.,*
　436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ................................................. *passim*

*Nieves v. Bartlett,*
　139 S. Ct. 1715 (2019) ................................................................................................. 4

iv

*Osterhoudt v. City of New York, et al.*,
   No. 10-cv-3173 (RJC)(RML), 2012 WL 4481927 (EDNY Sept. 27, 2012) ...................................22

*Pluma v. City of New York*,
   2015 WL 1623828 (SDNY March 31, 2015) ................................................................................2, 8

*Raymond v City of NY*,
   317 F Supp 3d 746 (SDNY 2018) ..........................................................................................................4

*Schmidt v Kosinski*,
   2022 US Dist LEXIS 80205, No. 22-cv-2210 (BMC) (EDNY May 3, 2022) ..................................14

*United States ex rel. Smith v NY Presbyt. Hosp.*,
   2007 US Dist LEXIS 53826 (SDNY July 18, 2007) ...............................................................................5

*Smith v. Plati*,
   258 F.3d 1167 (10th Cir. 2001) ..............................................................................................................8

*Specht v City of NY*,
   15 F.4th 594 (2d Cir 2021) ......................................................................................................................1

*State v Wilson*,
   268 P3d 506 (Kan Ct App 2012) ............................................................................................................7

*Tabbaa v Chertoff*,
   509 F3d 89 (2d Cir 2007) .............................................................................................................. 12, 13

*Thaddeus-X v. Blatter*,
   175 F.3d 378 (6th Cir. 1999) ...................................................................................................................8

*Troy v City of NY*
   (2014 US Dist LEXIS 136339, at *17, No. 13-cv-5082 (AJN) (SDNY Sep. 25,
   2014)) ........................................................................................................................................................7

*United States v Rowson*,
   2023 US Dist LEXIS 13832 (SDNY Jan. 26, 2023) ..............................................................................7

*United States v White*,
   2010 US Dist LEXIS 9603, No. 7:08-CR-00054 (WD Va Feb. 4, 2010) ............................................7

*Vasquez v. City of NY*,
   2018 US Dist. LEXIS 78429 (SDNY May 9, 2018) ............................................................................22

*Walker v. City of New York*,
   974 F.2d 293 (2d Cir. 1992) .................................................................................................................23

*Williams v Novak*,
   2018 US Dist LEXIS 135423, at *55-56, No. 9:16-CV-1211 (GTS/TWD)
   (NDNY Aug. 9, 2018) ...........................................................................................................................11

*Zherka v. Amicone,*
   634 F.3d 642 (2d Cir. 2011) ............................................................................................ 9

**Other Authorities**

Fed.R.Civ.P. 9(b) ............................................................................................................... 3

Fed.R.Civ.P. 12(b)(6) ........................................................................................................ 1

U.S. Const., amend. I ................................................................................................ *passim*

## PRELIMINARY STATEMENT

Plaintiff Justin Sherwood submits this Memorandum of Law and the accompanying Declaration of Gideon Orion Oliver ("Oliver Dec.") in opposition to the pending motion by Defendants City of New York an Tiagom Reis (collectively, "Defendants") to dismiss the First Amendment retaliation claims and municipal liability claims[1] pleaded in the First Amended Complaint ("FAC") pursuant to Fed.R.Civ.P. 12(b)(6).

## STATEMENT OF FACTS

For a full statement of facts, Mr. Sherwood respectfully refers the Court to the FAC and the documents referred to and incorporated by reference therein, including those attached to the Oliver Dec. *See, e.g., Gilbert v Stony Brook Univ.*, 2022 US Dist LEXIS 24355, at *13-14 (EDNY Feb. 9, 2022).

## ARGUMENT

### I.  Defendants' Argument for Dismissal of the First Amendment Retaliation Claim Against Defendant Tiagom Reis Fails.

Time and again, the Second Circuit has emphasized that "possible governmental misconduct is a legitimate and an important topic of public concern," such that actions alleging retaliation for the reporting of such conduct are at the core of what the federal Civil Rights Act protects. *See, e.g., Specht v City of NY*, 15 F.4th 594, 601 (2d Cir 2021). Defendants do not contest (nor could they, at least on this motion) that (1) Plaintiff was reporting government misconduct "regarding [police] vehicles that [] were illegally parked" (FAC ¶ 2); (2) that Defendant Reis "responded by" calling Plaintiff and trying to intimidate him, and then refused to even identify himself (as he was legally

---

[1] Although Defendants' motion and February 21, 2023 Memorandum of Law ("Defendants' MOL") also sought dismissal of Mr. Sherwood's state law claims, Defendants have since withdrawn that application as to the September 10, 2021 and October 28, 2021 incidents (*see* ECF 33), and Mr. Sherwood has only pleaded state law claims as to those incidents, so that prong of Defendants' motion is moot.

1

required to do), and (3) that the City itself has already substantiated complaints that Defendant Reis engaged in both "Abuse of Authority" and "Discourtesy" of a kind that warranted discipline (*id.*).

Yet, Defendants argue that "Plaintiff's First Amendment retaliation claim fails as matter of law as against Officer Reis, as he committed no constitutional violation." Defendants' MOL p. 4. They argue this is so because (they claim) (1) "plaintiff has not alleged a cognizable injury" (*id.* at 5); (2) "plaintiff had not demonstrated a retaliatory motive" (*id.* at 6); and (3) "plaintiff cannot show evidence of a chilling effect" (*id.* at 6).[2] These arguments all fail, both because they fail to engage with the well-pled facts in the complaint and the broader legal standards.

For a private citizen engaged in petitioning activity, a First Amendment retaliation claim is well pled when a Plaintiff pleads that (1) they were exercising a right protected by the First Amendment; (2) the challenged actions were motivated or substantially caused by exercise of that right; and (3) the Defendant's actions caused them some injury. *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). A plaintiff may show either chilled speech or "some other concrete harm." *Pluma v. City of New York*, 2015 WL 1623828, at *7 (SDNY March 31, 2015). In this connection, "'[c]hilled speech is not the *sine qua non* of a First Amendment claim" – rather, a plaintiff may show "*either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm.'" *Pluma,* 2015 WL 1623828, at *7 (citation omitted) (emphasis in original); *see also id.* ("Here, although plaintiff pleads little by way of chilling, he clearly alleges a concrete injury caused by the officers' pushing and deploying pepper spray, which satisfies the standard recently articulated by the Court of Appeals"). Here, Defendants only seem to contest the second element. And for the reasons below, that challenge fails.

---

[2] Plaintiff notes that the latter two of these explicitly seem to demand evidentiary showings — that Plaintiff "demonstrate[]" and produce "evidence" — that are not required on a motion to dismiss. Plaintiff proceeds as if these arguments instead focus on whether the facts pled, if true, would suffice to make the relevant conclusions plausible, applying the appropriate, deferential standard of review.

## A.  Mr. Sherwood engaged in protected conduct.

Defendants do not appear to contest that Mr. Sherwood's 311 complaints were protected conduct. Nor could they. It is beyond cavil that citizens' "rights to complain to public officials and to seek administrative and judicial relief from their actions" are protected by the First Amendment. *Dougherty v Town of N. Hempstead Bd. of Zoning Appeals*, 282 F3d 83, 91 (2d Cir 2002). Mr. Sherwood's protected conduct was core petitioning activity:  He was filing complaints for redress with 311, an arm of the government. There can be no question Mr. Sherwood engaged in protected conduct.

## B.  The FAC adequately pleads retaliatory motive.

Defendants' argument about retaliatory motive is fundamentally misguided. At bottom, Defendants' argument here is little more than a reworded version of their argument on injury. That is, it is not that Defendants are really arguing that Plaintiff's 311 complaint did not **cause** or **motivate** Defendant Reis's response (e.g., motive/causation) — in fact, they concede that "Officer Reis **did** respond" to the 311 complaint (ECF No. 32 at 6) — it is that Defendants are saying the retaliation was not retaliatory, as it were, or that it was not sufficiently severe. Under Fed.R.Civ.P. 9(b), "malice, intent, knowledge and other conditions of mind . . . may be averred generally." "The ultimate question of retaliation involves a defendant's motive and intent, both difficult to  plead with specificity in a complaint. … It is sufficient to allege facts from which a retaliatory intent on the part of the defendants reaonably may be inferred." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002). Plaintiff has done so here.

To make the argument they do, Defendants must elide the applicable standard on motive. Defendants cite cases (or, more accurately, a case) about what to do when "evidence of retaliatory motive is weak, or evidence of non-retaliatory motive is strong." Defendants' MOL p. 6, *quoting*

3

*Nieves v. Bartlett*, 139 S. Ct. 1715, 1736 (2019).[3] But "generally, temporal proximity is strong circumstantial evidence of improper intent." *Raymond v City of NY*, 317 F Supp 3d 746, 773 (SDNY 2018). So what courts do when motive evidence is weak is neither here nor there, because there is undisputedly "strong circumstantial evidence of improper intent." In fact, "[p]laintiffs may sufficiently plead a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action" without more, at least for the purposes of a motion to dismiss. *Id.; see also, Marom v City of NY*, 2016 US Dist LEXIS 28466, at *59, No. 15-cv-2017 (PKC) (SDNY Mar. 7, 2016) (denying motion to dismiss because "support for the allegation of a retaliatory motive ar[ose] from the proximity in time between plaintiffs' expressive conduct and their arrests"); *Gandhi v NY State Unified Ct. Sys.*, 2021 US Dist LEXIS 183938, at *25, No. 01:20-CV-0120 (LEK) (NDNY Sep. 27, 2021) (a little over a month provided "strong circumstantial evidence of improper intent"). Here, the temporal proximity is measured in minutes and hours, since it was the same day — a far cry from the multiple months that courts find can break the causal inference on a motion to dismiss. *Id.* at 774; 777 (events within the same month were "in sufficient temporal proximity to support an inference of causal connection" for one retaliation claim; while four months between complaint and alleged retaliation too attenuated to plausibly state claim as to another).

Defendants expressly concede causation, so there is little serious argument the FAC meets the applicable standard for showing motive. Defendants' argument otherwise basically proceeds by saying "plaintiff does not show any retaliatory motive," then assuming it is so because they said it. Defendants' MOL p. 6. They also seem to suggest that a harassing phone call amounts to "respond[ing] to [Plaintiff's] 311 complaints." *Id.* But, as noted above, that's exactly the problem: Defendant Reis responded. That response was, however, not a good faith response, but harassment

---

[3] Defendants also elide that *Nieves* concerns a retaliatory arrest claim, where there **is** probable cause — that is a situation where "evidence of non-retaliatory motive is strong." *Id.* That is not the case here, and Defendants do not argue it.

and/or retaliation. Indeed, Defendants' argument makes no sense here because, of course, *any* retaliation will always be, in some sense, "responding" to the First Amendment speech it is retaliating against.[4]

Moreover, in a First Amendment retaliation case, it is "sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Dougherty*, 282 F3d at 91. And here, those facts abound. Reis was working at the 84th Precinct. FAC ¶ 23. Plaintiff complained about "illegally parked vehicles in the vicinity of the 84th Precinct." FAC ¶ 48. The City's 311 system routes such complaints to the local NYPR precinct for response. FAC ¶ 2. And then, essentially right away, Reis called and harassed Plaintiff about it. FAC ¶¶ 8, 48, 50. NYPD members and other City officials are required to keep personally identifying information related to 311 complaints private and confidentially, and only to use it for authorized purposes. FAC ¶ 3.

A reasonable jury could infer that Reis meant for that call, in which he refused to identify himself, to intimidate and prevent Plaintiff from continuing to report illegal conduct by Reis and others to 311. FAC ¶ 9. Indeed, given what followed (and what Defendant Reis knew or should have known would follow), Defendant Reis didn't *need* to say more to make sure Plaintiff got the message. Showing the call was intended to intimidate, be retaliatory, and was part of a campaign by multiple NYPD members – including numerous members of the NYPD's 84th Precinct[5] -

---

[4] Indeed, countless cases specifically use variations of the phrase "respond by" (the phrase Defendants use) to describe the necessary causal connection. *See, e.g., Campo v City of NY*, 2022 US Dist LEXIS 60288, at *84, , No. 19-CV-04364 (NGG) (SJB) (EDNY Mar. 31, 2022) (claim against individual officer survived summary judgment where "after [plaintiff] complained," the defendant-officer "responded by" mocking her); *United States ex rel. Smith v NY Presbyt. Hosp.*, 2007 US Dist LEXIS 53826, at *48 (SDNY July 18, 2007) (claim well-pled where Plaintiff alleged defendants received a complaint and "responded by" retaliating).

[5] Defendants say "plaintiff makes no allegations that Officer Reis contacted any of the other individually named defendants, informed them of his actions with plaintiff, or worked with them." Defendants' MOL p. 6. Of course, he need not do so. However, beyond that, the FAC includes allegations based on which a jury could infer there was some degree of action in concert. For example, Plaintiff explicitly alleges that many of the Defendants — including Reis — worked together at the 84th Precinct, all under DI Rana's command, during a time period in which DI Rana knew about, and failed to adequately respond to, Plaintiff's – and others' - complaints. FAC ¶¶ 13, 22-24, 69-70; *see also,* ¶¶ 156-161 (detailing another person's similar experience with intimidation when he tried to report illegally parked 84th Precinct vehicles). The coordinated campaign of harassment involving NYPD members from the 84th Precinct is circumstantial evidence based on which a jury could ultimately find that Defendant Reis coordinated with the other Defendants. But, if

5

attempting to intimidate Plaintiff out of reporting their misconduct — rather than, as Defendants baldly claim, a sincere attempt to address illegal parking by members of the 84th (Defendants' MOL p. 6) — Defendant Reis refused to identify himself or even provide any of the kind of information he would have if he were actually trying to help.

Thus, even without the presumption of causation and retaliation that comes with the very, very short period at issue here, the above more than suffices on a motion to dismiss for a jury to infer retaliatory motive. And, again, Defendants concede as much explicitly. Defendant Reis receive Mr. Sherwood's 311 complaint about his, or his colleagues', conduct, and "respond by" making a harassing phone call. Defendants' MOL p. 6.

### C. The FAC adequately pleads that Defendant Reis's conduct caused a chill and First Amendment injury.

Defendants first argument and their final argument (Defendants' MOL pp. 5 and 6-7) are essentially different versions of the same thing:  They argue that what Defendant Reis did was not bad enough to rise to First Amendment harm or chill. In doing so, they not only ignore that a reasonable jury could find Defendant Reis's use of protected personal information from the City's 311 system about Mr. Sherwood to call him as part of the required police response, without identifying himself, and hanging up, was calculated to harass and intimidate Mr. Sherwood, or had the predictable result of doing so, but also elide the Second Circuit's standards for First Amendment retaliation in a way that makes the applicable standards sound more complicated than they are, in fact. As this Court has explained:

> To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: "(1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection

---

not, Defendants' argument does not do what they think it does. Courts typically begin from an assumption that police use common sense and do not engage in illegal conduct without some motivating factor. If it is genuinely true that each of the many members of the 84th Precinct independently decided to harass someone who challenged their illegal parking practices, that speaks to the existence of a failure to supervise and an informal policy of retaliation. That is, if Defendants are right here, it means that they must be wrong about the *Monell* claims.

between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).

*Gilbert v Stony Brook Univ.*, 2022 US Dist LEXIS 24355, at *29, No. 21-cv-2273 (BMC) (EDNY Feb. 9, 2022).  Those three elements are all that is required (indeed, the first and third are not seriously contested) — and are met on the facts here.

On the second element, Defendant Reis clearly took adverse action against Mr. Sherwood. Reis's harassing and retaliatory call, which frightened and otherwise caused Mr. Sherwood emotional injury, was a harm in and of itself, setting aside the question of chill. That call was the first in a long serious.  So, in terms of chill — even if that were required as part of the second element — as the Court noted at the initial pretrial conference, the "chill" here might as well be a blizzard. Simply put, particularly given the City's policy that employees who acquire personal identifying information related to 311 complaints, such as the names and contact information of complainants, are required to keep that information confidential, and only to use it for authorized, official purposes, a NYPD member's calling a 311 complainant, refusing to identify themselves, and ultimately hanging up, taken in the context of the other facts pleaded in the FAC, including Mr. Sherwood's experiences with other NYPD members from the 84th Precinct, a reasonable jury could conclude that Defendant Reis's conduct was a harassing and/or retaliatory act that caused its own harm and/or cast a chill on Mr. Sherwood's willingness and ability to engage in future, similar protected conduct.

More fundamentally, Defendants' arguments fail to take seriously the power the NYPD wields[6] — and its responsibilities to enforce the law and City policies about privacy and treating

---

[6] In this connection, Defendants' citation to Judge Nathan's unpublished decision in *Troy v City of NY* (2014 US Dist LEXIS 136339, at *17, No. 13-cv-5082 (AJN) (SDNY Sep. 25, 2014)) is a red herring, because it deals with an entirely different kind of situation — and a different kind of comment. In the course of a long series of complaints and multiple conversations, an officer asked the plaintiff there to "stop babbling" (as the Court noted, "rudely"), but continuing to take information and perform the job of taking the complaint. *Id.* at *16-17. But a rude comment in passing is different in kind than what happened here. Consider:  Heavy breathing during an ordinary conversation may be strange — indeed, it may even be a basis for suspicion that someone is nervous (*United States v Rowson*, 2023 US Dist LEXIS 13832, at *9 (SDNY Jan. 26, 2023)) — but when it is the **sole** content of a phone call, it takes on another quality entirely. *See, e.g., United States v White*, 2010 US Dist LEXIS 9603, at *15, No. 7:08-CR-00054 (WD Va Feb. 4, 2010) (noting that "repeated

civilian complainants with "courtesy, professionalism, and respect." Their argument, at its core, is

government actors receiving a First Amendment protected petition may "respond by" harassing the

petitioner, as long as that response doesn't cause a quantifiable chill for the person sufficiently firm

to bring a petition, and the harassment doesn't move past "rudeness." But though perhaps any

single part of "the effect on freedom of speech may be small" here, "since there is no justification

for harassing people for exercising their constitutional rights it need not be great in order to be

actionable." *Bart v Telford*, 677 F2d 622, 625 (7th Cir 1982). That is, what is alleged here is "an entire

campaign of harassment which though trivial in detail may have been" — and indeed, was —

"substantial in gross." *Id.* Thus, and for the reasons below, Defendants' arguments fail.

   i.   *Dispositively, the harm here is the kind of harm that the Second Circuit has said may
        supplant any requirement to show actual chill.*

   "[D]efendants are correct that a plaintiff asserting First Amendment retaliation must allege

some sort of harm, but they are wrong that this harm must, in all cases, be a chilling of speech." *Gill

v Pidlypchak*, 389 F3d 379, 383 (2d Cir 2004).[7] As seen above, a plaintiff may show either chilled

speech or "some other concrete harm" *Pluma v. City of New York*, 2015 WL 1623828, at *7 (SDNY

March 31, 2015) or both. In jumping to attacking injury (measured by chill, in their estimation) and

chill, Defendants elide past the fact that while actual chill is often required, "recent cases have

concluded that the chilling requirement applies only where no other harm is alleged." *LaVertu v Town

of Huntington*, 2014 US Dist LEXIS 165701, at *11, No. 13-CV-4378 (SJF)(SIL) (EDNY Oct. 7,

---

late night phone calls complete with heavy breathing on the other end of the line would, in a commonsense
interpretation, likely be considered intimidation" sufficient for criminal liability); *State v Wilson*, 268 P3d 506 (Kan Ct App
2012) (heavy breathing-only calls sufficed for stalking conviction because it is communication in a "manner that causes
that person [receiving it] to fear for his or her personal safety").

[7] There is something of a circuit split on this issue. The Ninth and Tenth circuits explicitly do not consider whether an
individual was chilled at all. *See, Lacey LLC v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc) and *Smith v. Plati*,
258 F.3d 1167, 1177 (10th Cir. 2001). The Fifth Circuit focuses primarily on actual chill. *Keenan v. Tejeda*, 290 F.3d 252,
259 (5th Cir. 2002). And meanwhile, the Sixth, Seventh, and D.C. Circuits use a more flexible test that does not require
actual chill whenever there is some concrete injury. *See Crawford–El v. Britton*, 951 F.2d 1314, 1322 (D.C. Cir. 1991);
*Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999); and *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

2014) (collecting cases), *adopted in full at* 2014 US Dist LEXIS 164828, at *1 (EDNY Nov. 24, 2014).
That is because, as the Second Circuit noted approvingly, "other forms of harm have been accepted
in place of this 'actual chilling' requirement." *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011),
*citing Gill*, 389 F3d at 382. Thus, while Defendants rely heavily on *Curley v. Village of Suffern*'s
formulation of the requirement to show chill (268 F.3d 65, 73 (2d Cir. 2001), *cited in* Defendants'
MOL pp. 6-7), the Second Circuit has explicitly cautioned that the *Curley* formulation "was an
imprecise statement of law." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Rather, as set out above, "[c]hilled speech is not the *sine qua non* of a First Amendment claim.
A plaintiff has standing if he can show *either* that his speech has been adversely affected by the
government retaliation or that he has suffered some other concrete harm." *Id.* (emphasis in original).
Since Defendants' authority for the test they put forward is essentially only the "imprecise statement
of law" in *Curley*, the Court may safely disregard Defendants' demand Plaintiff satisfy that
imprecisely framed version of the test.

On the merits, the FAC pleads both harm and chilled speech. As the Second Circuit has
explained, the chill requirement is often standing in for the fact that the "essential burden is to show
that [the plaintiff] was punished" for their speech. *Gill*, 389 F3d at 382. Thus, the canonical
examples of cases where no chill or special injury (beyond the retaliation itself) is required are prison
punishment and employment cases because "the injury 'inheres in the retaliatory conduct itself.'" *Id.,*
*quoting, in parenthesis, Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994). "Plaintiffs in these types of
cases need not show 'adverse action' (say, keeplock or firing) *plus* chilling." *Id.* (emphasis in original).

Here, in addition to rising to the level of harm on its own, the alleged conduct was part of a
blizzard (in the Court's phrase) of retaliatory conduct. Such a "pattern of intimidation" has been
recognized as one of the situations that fits the *Gill/Zherka* exception. *LaVertu*, 2014 US Dist
LEXIS 165701, at *11, *citing MacPherson v Town of Southampton*, 2013 US Dist LEXIS 62356, at *14,

9

No. 08 CV 4113 (DRH) (ARL) (EDNY May 1, 2013). That is, the harm that inheres in the kind of storm of intimidation at issue here is inherently chilling. Indeed, were it otherwise, the kinds of threats made to people who dare accuse the NYPD of illegal parking — among other things, "I'm going to kill you"; "I'm going to fuck the shit out of you [and your wife] …And if you keep them little sloppy sexy little kids around I'm going to get them too"; "Stop calling, dickhead"; threats to bar submitting complaints to 311 altogether, and an ominous "Keep fucking around" (FAC ¶¶ 53, 65, 94, 142) — would never see the light of day, because they would have succeeded in their intended chill. When retaliatory threats are threats of this kind, in this volume, "the fact that a particular plaintiff … responded to retaliation with greater than ordinary firmness does not deprive him of a cause of action." *Gill*, 389 F3d at 384. Otherwise the First Amendment right to petition would be a right without any content.

### ii.  *Defendants, including Defendant Reis, injured Plaintiff.*

Even if the Court does not find this case fits within the *Gill* framework, as set out above, the storm of retaliation that Mr. Sherwood has faced just for trying to get members of the NYPD to follow the law they are tasked with enforcing has caused him legally cognizable injuries. The individual acts of retaliation scared and chilled him. He lives with (reasonable, given what has happened) fear that Defendants' retaliation will escalate. FAC ¶ 10. He has endured unreasonable emotional distress for simply trying to report flagrant, rampant, illegal parking by members of the 84th Precinct. FAC ¶¶ 10, 169, 188, 192. To argue those injuries don't count, Defendants make two moves they do not justify: (1) they focus only on the effect of Defendant Reis's call alone and (2) they simply **state** the retaliation here was "*de minimis*," so a reasonable person would not be deterred.

As they must, Defendants all but admit Defendants beyond Defendant Reis caused cognizable injuries — though they drop a footnote saying other officers conduct "would not **necessarily** rise to a constitutional violation." *See, e.g.,* Defendants' MOL p. 6 ("Plaintiff further

10

makes no allegations that Officer Reis told plaintiff to stop calling, told him he would not be able to make 311 complaints, or sent threatening text message"). But even without that (all but) admission, it is well-settled that — at least when the threat is sufficiently "direct and specific" — a threat by an officer "to abuse his authority" in retaliation for petitioning activity is actionable. *Di Lello v Coviello*, 2022 US Dist LEXIS 8641, at *11, No. 20 CV 9180 (VB) (SDNY Jan. 18, 2022); *cf. also, Kerman v City of NY*, 261 F3d 229, 233 (2d Cir 2001) (statement "I'm going to teach you a lesson . . . I'll give you something to sue for" demonstrated retaliatory motive for other conduct).

As other courts have emphasized, "[a] pattern of harassment and vague threats may be considered collectively" in analyzing a retaliation claim. *Williams v Novak*, 2018 US Dist LEXIS 135423, at *55-56, No. 9:16-CV-1211 (GTS/TWD) (NDNY Aug. 9, 2018). Indeed (under the significantly higher bar that exists for prison retaliation), even where "potentially none of th[e individual] allegations rises to a level sufficient to support a finding of adverse action, collectively they [can] suffice to constitute adverse action." *Dabney v Maddock*, 2011 US Dist LEXIS 153935, at *12, No. 9:10-CV-0519 (GTS) (DEP) (NDNY Nov. 29, 2011), *adopted in full at* 2012 US Dist LEXIS 30481 (NDNY Mar. 7, 2012). By failing to analyze Defendant Reis's harassment in its full context, Defendants avoid having to grapple with Plaintiff's actual claim.[8]

Plaintiff petitioned 311 for redress of a grievance about the conduct of all the officers at the 84th Precinct. And collectively, the officers at the 84th Precinct made a panoply of threats — sending the unambiguous message that if Mr. Sherwood "[kept] fucking around" (FAC ¶ 94), they would take other abusive next steps. Mr. Sherwood has been, of course, injured by that. And the fact that he is strong enough to keep saying, notwithstanding illegal threats, that police ought to follow the

---

[8] In this connection, while discovery is still in its early stages and Plaintiff has not yet seen the disciplinary files, it is hard to imagine that simply "simply hanging up on a plaintiff who is making a grievance claim" (Defendants' MOL p. 5) would have been enough to merit the second level recommended punishment of Command Discipline B, which Defendant Reis received. FAC ¶¶ 49-50. Rather, it seems more likely that the CCRB considered Defendant Reis's harassment in its full context — as Plaintiff submits this Court should too.

law is of no moment to that injury. As former Judge Posner's opinion in *Bart* spelled out sagely, "an entire campaign of harassment which though trivial in detail[,] may have been substantial in gross." *Bart,* 677 F2d at 625. And that is so because "there is no justification for harassing people for exercising their constitutional rights." *Id.*

> iii. *Defendants' actions, including Defendant Reis's, are — by design — and, in any event, amount to, a blizzard of chill.*

As noted above, Defendants' reliance on *Curley*'s "imprecise statement of law" is misplaced when they demand Plaintiff show actual chill rather than some other harm and/or chill. *Dorsett*, 732 F.3d at 160. That is, "the fact that a particular plaintiff … responded to retaliation with greater than ordinary firmness does not deprive him of a cause of action." *Gill,* 389 F3d at 384.

But here, the actions at issue are a blizzard of chill anyway. As discussed at length elsewhere, Defendant Reis's conduct was part of an extensive pattern of harassment and/or retaliation with the purpose and/or effect of ending Mr. Sherwood's protected conduct. To try to intimidate Plaintiff any those like him from reporting, together, Defendants called people reporting parking violations at all hours, threatened death and sexual assault of peoples' children, told them to "keep fucking around" and find out what would happened, and so on. In that context, "the prospect of being singled out for such extensive [harassment] could reasonably deter others" from making similar speech. *Tabbaa v Chertoff*, 509 F3d 89, 102 (2d Cir 2007).

### D. Defendants' actions also constitute a burden on First Amendment rights, standing alone.

Defendants' actions are designed to, and do, chill speech. However, what Defendants did here is ***also*** a stand-alone interference with Mr. Sherwood's fundamental rights protected by the First Amendment. It is well-settled that "the Constitution's protection is not limited to direct interference with fundamental rights." *Healy v. James*, 408 U.S. 169, 181-84 (1972). Rather, in the associational context, for example, "[g]overnment action can constitute a direct and substantial

interference with associational rights even if there is no prior restraint and no clear chilling of future expressive activity." *Tabbaa v Chertoff*, 509 F3d 89, 101 (2d Cir 2007) (noting "[i]t did not matter that the plaintiffs in *Healy* had not demonstrated a chilling effect on their desire or ability to associate in the future, or that they could freely hold their meetings and distribute their materials off campus; rather, there was a substantial burden because of the significant 'disabilities imposed' by the defendant's actions.").

If the City established an official policy that any person who wanted to report illegal parking by the NYPD had to field dozens of threatening phone calls and would receive those calls at all hours, the policy would be a burden the right to petition and therefore unconstitutional (regardless of whether a particular plaintiff was deterred — because having run the gauntlet to simply file a petition would be injury enough). It is well-settled when it comes to First Amendment burdens that "what cannot be done directly cannot be done indirectly," since "[t]he Constitution deals with substance, not shadows." *Cummings v Missouri*, 4 Wall [71 US] 277, 325 (1867). As set out in the complaint, and in particular, in the various articles incorporated therein (and presumed true), the 84th Precinct has created exactly that burden: "Users of 311 [have] received barrages of phone calls in the middle of the night from blocked phone numbers after submitting reports about cars obstructing bike lanes, using dubious parking placards or flouting other traffic laws." FAC ¶ 139. Members of the public frequently report receiving threats immediately — in as few as 15 minutes (FAC ¶ 151) — from making 311 complaints. *See also,* FAC ¶¶ 123-163.

In that context, Defendants' actions — amounting to, as they have, an automatic, if/then response to a person reporting illegal conduct by NYPD drivers —- should (perhaps must) be seen as a direct burden on the right to petition for redress. And Defendants cannot meet the burden to show, as they must once they burden a fundamental right, that their actions meet strict scrutiny. *Compare, by analogy, Schmidt v Kosinski*, 2022 US Dist LEXIS 80205, at *5, No. 22-cv-2210 (BMC)

(EDNY May 3, 2022) (strict scrutiny for statute that places a burden on the right to petition for

ballot access).

### E.  If the Court grants the motion as to Defendant Reis, it should dismiss without prejudice.

Finally, even if the Court grants the motion, it should only grant dismissal without prejudice.

Plaintiff, at this stage, has no discovery, does not have the investigative files, lacks information

beyond what is public and common-sense inferences (discussed above in n. 5) about whether the

various members of the 84th Precinct were acting in intentional concert. As an illustrative, but

speculative, example, if discovery reveals that Defendant Reis was regularly texting about how the

NYPD needed to "send a message" to the people who "think they can boss us around," and

laughing at the content of various retaliatory messages, obviously that would place Defendant Reis's

actions alleged in the FAC in a different light — and warrant amendment to add him back, even if

he were previously dismissed.  Thus, Plaintiff respectfully requests any individual dismissal be

without prejudice to a motion to amend later.

### II.    The FAC States a Municipal Liability Claim.

To hold a municipal entity liable under § 1983 for the unconstitutional acts of its employees, a plaintiff must plead and prove that his constitutional rights were violated, that the alleged actions by the employees were the result of an official policy, custom, or practice of the municipal defendant, and that the policy, custom, or practice caused the plaintiff's alleged injuries. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Monell v. N.Y. City Dep't of Social Servs.,* 436 U.S. 658, 690-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)….

A plaintiff may satisfy the "policy, custom or practice" requirement in one of four ways. *See Moray v. City of Yonkers,* 924 F. Supp. 8, 12 (S.D.N.Y. 1996). The plaintiff may allege the existence of: (1) a formal policy officially endorsed by the municipality, *see Monell,* 436 U.S. at 690; [*32] (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question, *see Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-84, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (plurality opinion); *Walker v. City of New York,* 974 F.2d 293, 296 (2d Cir. 1992); (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials, *see Monell,* 436 U.S. at 690-91; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to

> deliberate indifference to the rights of those who come into contact with the
> municipal employees. *See City of Canton,* 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.
> Ed. 2d 412 (1989). There must also be a causal link between the policy, custom, or
> practice and the alleged injury in order to find liability against a municipality. *See
> Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983).

*Bradley v City of NY,* 2007 US Dist LEXIS 7811, at *31-32 (SDNY Jan. 25, 2007); *see also, e.g., Marlin v City of NY,* 2016 US Dist LEXIS 122426, at *51 (SDNY Sep. 7, 2016). As Defendants' MOL on this point acknowledges, the FAC explicitly raises both the third and fourth ways for establishing *Monell* liability. *See, e.g.,* FAC ¶¶ 172-187.

### A. The FAC sufficiently pleads that City agents engaged in an informal practice that policymaking officials were aware of at all relevant times.

As to the third way for establishing *Monell* liability — the existence of a *de facto* practice or custom "so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials," *Bradley*, 2007 US Dist LEXIS 7811, at *32 —

> In order to establish *Monell* liability based upon a "persistent and widespread"
> practice by a subordinate municipal employee (or employees) other than a
> policymaker, the employee's unconstitutional conduct must be "so manifest as
> to  [*298]  imply the constructive acquiescence of senior policy-making officials."
> *Sorlucco v. N.Y.C. Police Dep't,* 971 F.2d 864, 870-71 (2d Cir. 1992) (citing *City of St.
> Louis v. Praprotnik,* 485 U.S. 112, 130, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); *Krulik
> v. Bd. of Educ. of the City of N.Y.,* 781 F.2d 15, 23 (2d Cir. 1986)). In other words, there
> must be "sufficient instances of tolerant awareness by supervisors of abusive conduct
> to support an inference that they had a policy, custom or usage of acquiescence in
> such abuse." *Jones v. Town of East Haven,* 691 F.3d 72, 82 (2d Cir. 2012); *see also Batista
> v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983) (acknowledging that inaction may lead
> to municipal liability for the "persistent failure to discipline subordinates who violate
> civil rights" as it can "give rise to an inference of an unlawful municipal policy of
> ratification of unconstitutional conduct within the meaning of *Monell*"). It is only at
> that point that, although not expressly authorized, the unconstitutional conduct is so
> persistent and widespread that it can constitute a custom or usage of which a
> supervising policymaker must have been aware. *See Bd. of Cnty. Comm'rs v. Brown*, 520
> U.S. 397, 403-04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

*Lucente v County of Suffolk*, 980 F3d 284, 297-298 (2d Cir 2020). In that connection, the Second Circuit has

held that "where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts." *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980); *see also Krulik*, 781 F.2d at 23 ("[A]n individual official's acts can rise to the level of 'policy' when 'senior personnel' knowingly 'acquiesce' in their subordinates' behavior.").

…[U]nder this theory of *Monell* liability, "even if a policy can be inferred from omissions of a municipality, such as where it acquiesces in a pattern of illegal conduct, such a policy cannot be inferred from the failure of those in charge to discipline a single police officer for a single incident of illegality"; instead, there must be "more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct." *Turpin*, 619 F.2d at 201-02.

*Id.* at 306.

Against that backdrop, Defendants make only the three arguments on this point, each of which Plaintiff addresses in turn below.

> i. *The FAC sufficiently pleads that the Individual Defendants engaged a practice of harassing and/or retaliating against Mr. Sherwood and, more, broadly, that other NYPD members engaged in a practice of harassing and/or retaliating against others, for making 311 complaints about illegally parked NYPD and other vehicles.*

First, Defendants say "plaintiff does not adequately allege that there was any failure by NYPD officers to <u>respond</u> to 311 complaints themselves" but rather alleges "that the responses by the individual defendants were inappropriate and done in retaliation for his exercise of his First Amendment rights" and, at any rate, they say Mr. Sherwood "does not raise sufficient allegations to support his claim." Defendants' MOL p. 8 (emphasis in original). However, Defendants are wrong, and the Court should reject their arguments.

Preliminarily, setting aside his own experiences and the pattern of practices that injured him, Mr. Sherwood does not need to plead (or prove) that the City had a more general policy, practice, or custom of ignoring, dismissing, and neglecting 311 complaints related to illegally parked vehicles. He need only plausibly plead facts based on which, if true, considered together with any reasonable inferences favorable to Mr. Sherwood, a reasonable jury could find that there was "a practice so

consistent and widespread that it constitute[d] a custom or usage sufficient to impute constructive

knowledge of the practice to policymaking officials" with a sufficient "causal link" to "the alleged

injury" to impute liability to Defendant City. *Bradley*, 2007 US Dist LEXIS 7811, at *32.

Mr. Sherwood has done that. The FAC identifies, and provides sufficient factual support, for

pleading purposes, as to pattern of practices that injured him, including that it extended beyond his

own experiences to include incidents involving people other than Mr. Sherwood and NYPD

members other than the Individual Defendants, which were sufficiently widespread that

policymaking officials knew (and should have known) about them, yet failed to take meaningful

action in response. For example, the FAC describes incidents of harassment and/or retaliation

against individuals who file 311 complaints regarding illegally parked NYPD and other vehicles,

including several involving Mr. Sherwood, coupled with evidence of both the City's awareness of

and investigations into the four harassing/retaliatory incidents involving Mr. Sherwood, as well as

multiple other incidents, and failures to train and supervise related to the pattern of

harassing/retaliatory incidents. *See generally* FAC ¶¶ 48-163. That pattern of multiple incidents

describes just the kind of pattern and practice that can and does give rise to *Monell* liability,

particularly when, as here, municipal policymakers know and should know about multiple incidents

involving similar behavior, and fail to adequately train, supervise, discipline, or otherwise take action

in response to them.

The FAC describes that pattern and practice of harassment and/or retaliation against

individuals who file 311 complaints regarding illegally parked NYPD and other vehicles and the

City's responses to them (or lack thereof) as the City's "condoning and/or encouraging NYPD

harassment and/or retaliation against people who file 311 complaints regarding illegally parked

NYPD and other vehicles," FAC ¶ 19; "the City's…failures to investigate, supervise, and/or

discipline … NYPD members who harass and/or retaliate against people who complain[]about such

illegal parking," FAC ¶ 123; the City's "having allowed a culture to flourish where NYPD members feel comfortable – and even justified – in calling to harass members of the public who report illegally parked NYPD vehicles to 311," FAC ¶ 163; and the City's "*de facto* policies, practices, and customs of allowing NYPD members to ignore or otherwise fail to respond appropriately to 311 complaints about illegally parked vehicles, including illegally parked vehicles owned or operated by NYPD members, and of allowing NYPD members to harass and/or retaliate against people who lodge them, such as Mr. Sherwood, without properly investigating, supervising, and/or disciplining NYPD members who engage in such misconduct," FAC ¶¶ 173-177.

Setting that pattern and practice aside, the reality is that the City also had (and has) a history, which is also framed up in the FAC, of ignoring, dismissing, and neglecting 311 complaints related to illegally parked vehicles – in other words, of failing properly to respond to 311 complaints – more broadly, and that reality *is* related to the practices that directly injured Mr. Sherwood: it forms the backdrop for those practices. In other words, the harassment and retaliation that Mr. Sherwood (and others) experienced for complaining about illegally parked NYPD and other vehicles that is detailed in the FAC must be understood in light of the City's history of ignoring, dismissing, neglecting, and otherwise failing to respond properly to 311 complaints about illegally parked vehicles. That history, in turn, has led to a broader culture of condoning illegal parking and inappropriate police response to complaints of illegal parking. And it is at least in part that culture that has emboldened NYPD members such as and including the Individual Defendants to harass and/or retaliate against Mr. Sherwood and people like him. So, although pleading that the City has a history of improperly responding to 311 complaints about illegally parked NYPD and other vehicles provides background for Mr. Sherwood's claims, it is not background he need prove up.

That said, contrary to Defendants' bare and unsupported claims that the FAC is inadequate on this front, Mr. Sherwood has adequately alleged, for pleading purposes, both that the Individual

Defendants' responses to Mr. Sherwood and others amounted to an inappropriate, harassing, and retaliatory pattern and practice, and that City policymakers had actual and constructive knowledge of the pattern and practice. For example, the FAC pleads that:

- Mr. Sherwood has lodged many 311 complaints related to illegally parked vehicles near the NYPD's 84th Precinct and Transit Division 30 in response to which, in most cases, "NYPD members have taken no enforcement action …and marked them as closed – often falsely" including on September 10, 2021 and October 18, 2021 (*see, e.g.,* FAC ¶¶ 4-6, 57-61, 88-93);

- The Individual Defendants responded in an inappropriate and retaliatory way to Mr. Sherwood's 311 complaints on August 13, 2021, August 26, 2021, September 10, 2021, and October 18, 2021 (*see, e.g.,* FAC ¶¶ 7-10, 48, 52-53, 62-66, and 94-98); and

- At all relevant times, Defendant City agents, including NYPD supervisors officials who had the duty and responsibility to supervise and discipline subordinate NYPD members, knew about the four incidents of NYPD harassment and/or retaliation of Mr. Sherwood described in the FAC, but failed to take reasonable action to supervise and/or discipline the Individual Defendants in response (*see, e.g.,* FAC ¶¶ 11-17, 54-5, 67-86, 99-122, 135-137, 140, 145, and 183).

In addition, although, as seen above, it is not essential to making out his "pattern and practice"-based *Monell* theory of liability, the FAC has also adequately pleaded that NYPD members have a history of failing to respond to 311 complaints. For example, the FAC pleads that the NYPD has a documented history of ignoring, dismissing, and neglecting 311 complaints related to illegally parked vehicles, leading to a 2021 City Council investigation and an October 2021 hearing around which NYPD harassment of and retaliation against 311 callers, rather than properly investigating and responding to their complaints, was a key issue, such that then-Mayor Bill de Blasio vowed the City would "'immediately investigate'" (*see, e.g.,* FAC ¶¶ 125-134, 146-148). At the motion to dismiss stage, without discovery, that is sufficient to nudge the allegation across the line from conceivable to plausible.

> ii. *The FAC alleges instances of constitutional violations against not just Mr. Sherwood, but several others.*

Defendants' second argument is that "plaintiff alleges only instances of constitutional violations directed at one person, himself and in a limited geographical area around the vicinity of the 84th Precinct and Transit District 30" but "does not allege any other instances of constitutional violations of officers against individuals who made 311 complaints." Defendants' MOL p. 9. That boilerplate argument is inconsistent with the well-pleaded allegations in the FAC.

As discussed several times above, the FAC includes allegations about many other instances of harassment and retaliation against individuals other than Mr. Sherwood who made 311 complaints, including incidents that occurred outside the confines of the 84th Precinct and TD30, of which the City was or should have been aware. *See, e.g.,* FAC ¶¶ 124, 126-129, 137-139, 141-144, 149-162. Those incidents, which should be viewed as representative examples rather than an exhaustive, *see, e.g.,* FAC ¶¶ 124, 162, demonstrate that the *de facto* practice of NYPD members' harassing and/or retaliating against people who make 311 complaints related to illegally parked NYPD and other vehicles extends well beyond Mr. Sherwood's experiences, that the City has long known it, and that the City has not taken adequate steps to address it.

       iii.  *The FAC adequately pleads that none of the Individual Defendants have received any discipline or consequences as a result of their harassment of and/or retaliation against Mr. Sherwood, and includes sufficient facts based on which a reasonable jury could find that the City's investigations into the Individual Defendants' harassment of and/or retaliation against Mr. Sherwood were inadequate.*

Third, and finally on Defendants' argument that Mr. Sherwood has not shown a *de facto* pattern or practice, the Court should reject Defendants' argument that "plaintiff's allegations that this is a *de facto* policy is not supported by plaintiff's own contention that the actions of the individually named defendants was investigated, substantiated, and that they received disciplinary action." Defendants' MOL p. 9.

At the outset, and importantly, the FAC does *not* plead that any of the Individual Defendants received discipline — let alone meaningful or adequate discipline — but rather that, following a long

period of time following Mr. Sherwood's complaints and participation in CCRB interviews,

eventually, the CCRB substantiated allegations against each of the Individual Defendants and

*recommended* that the Individual Defendants each receive some penalty. *See, e.g.,* FAC ¶¶ 50-51, 55-56,

76-78, 121-122. If any of the Individual Defendants has received any penalty or discipline as a result

of the CCRB's investigations, findings, and recommendations, Mr. Sherwood does not know of it.

The NYPD Commissioner has the ultimate authority, and responsibility, to determine which

penalties to levy. *See, e.g., Matter of Carr v de Blasio*, 70 Misc 3d 418, 437-438 (Sup Ct, NY County

2020). Moreover, the CCRB's findings and recommendations as to the four incidents involving Mr.

Sherwood come in some cases over a year after the CCRB first learned of the incidents — a

significant length of time. Additionally, even the CCRB's recommendations provided only for fairly

low penalties, such as a reprimand at the command level, that a reasonable jury could find were not

reasonable in light of the misconduct and the authorized purposes for imposing penalties in police

discipline cases, such as deterrence of other and future misconduct on the part of fellow officers.

Beyond the CCRB's investigations, findings, and eventual recommendations, it is not clear to what

extent other City agencies that claimed to have been investigating the incidents of harassment

and/or retaliation against Mr. Sherwood (and others), such as the NYPD's IAB or the City's DOI,

actually investigated the incidents and, if so, what the results of those investigations were. Against

that backdrop, based on the FAC, a reasonable jury could find that whatever investigations the City

conducted, and/or whatever discipline the City imposes (if any), were inadequate under the

circumstances.

### B.  The FAC adequately pleads both failures to train and supervise.

As to the fourth way for establishing *Monell* liability — "a failure by policymakers to train or

supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of

those who come into contact with the municipal employees" — Defendants say only that "plaintiff

cannot show deliberate indifference or a direct causal link" between the inadequate training and

supervision and a violation of Mr. Sherwood's rights and repeat their argument that "the individually

named officers were investigated, substantiated, and the officers were disciplined." Defendants'

MOL pp. 9-10.

i. *The FAC adequately pleads the requisite "deliberate indifference."*

> Under the fourth theory of *Monell* liability, a plaintiff can establish deliberate
> indifference by demonstrating that: "(1) a policymaker knows to a moral certainty
> that her employees will confront a given situation; (2) the situation either presents
> the employee with a difficult choice of the sort that training . . . will make less
> difficult or that there is a history of employees mishandling the situation; and (3) the
> wrong choice by the city employee will frequently cause the deprivation of a citizen's
> constitutional rights." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 391
> (S.D.N.Y. 2013) (quoting *Walker v. City of N.Y.*, 974 F.2d 293, 297-98 (2d Cir. 1992))
> (internal quotation marks omitted).

*Edrei v City of NY*, 254 F Supp 3d 565, 580 (SDNY 2017), *aff'd*, 892 F.3d 525 (2d Cir. 2018).

On the issue of "deliberate indifference," the same standards apply to both failure to train

and failure to supervise-based *Monell* claims. *See, e.g., Vasquez v. City of NY*, 2018 US Dist. LEXIS

78429, at *27 (SDNY May 9, 2018) (internal citations omitted). Among other ways, "'[d]eliberate

indifference to claims of such civil rights violations … may be inferred from a municipality's lack of

appropriate response to repeated complaints of such violations.'" *Osterhoudt v. City of New York, et al.*,

No. 10-cv-3173 (RJC)(RML), 2012 WL 4481927, at *1 (EDNY Sept. 27, 2012), quoting *Jackler v.*

*Byrne*, 658 F.3d 225, 236 (2nd Cir. 2011). Plaintiffs' "evidence must establish only that a

policymaking official had notice of a potentially serious problem of unconstitutional conduct, such

that the need for corrective action or supervision was 'obvious.'" *Amnesty America v. Town of West*

*Hartford*, 361 F.3d 113, 129, 128 (2d Cir. 2004). Where a municipality displays a "policy of inaction",

that can be "the functional equivalent of a decision by the city itself to violate the Constitution."

*Connick v. Thompson*, 131 S.Ct. 1350, 1366 (2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 395

(1989)).

Here, the FAC adequately pleads deliberate indifference with reference to all three of the *Walker* prongs. As to the first and second *Walker* prongs, City policymakers know that NYPD members will interact with members of the public in responding to 311 complaints, including because that is how the City's responses to 311 complaints works as a matter of formal policy. And City policymakers also know that NYPD members who interact with members of the public who have made 311 complaints about illegally parked NYPD and other vehicles had a history of responding inappropriately to those complaints, including, but not limited to, by ignoring, dismissing, and neglecting complaints, and/or harassing and/or retaliating against people who make them. Also as to the second prong, such interactions with members of the public are clearly the sort that proper training and supervision will make less difficult. Finally, as to the third prong, it is clear that, in responding to 311 complaints about illegally parked NYPD and other vehicles, as well as in situations where NYPD members interact with members of the public who have made such complaints, the wrong choice – for example, a choice that results in harassing and/or retaliating against a 311 caller – will frequently cause the deprivation of a constitutional right.

As seen below, in addition to adequately pleading deliberate indifference, the FAC adequately pleads that Defendant City's failures to train and supervise NYPD members amounted to deliberate indifference.

## ii.   *The FAC adequately pleads Defendant City's failure to train.*

Where there are allegations that deprivations of constitutional rights were caused by a municipality's failure to train its officers, the inquiry is whether "the injury [could][have been avoided had the employee been trained under a program that was not deficient in the identified respect." Id., 489 U.S. at 391. Although more is required after discovery, because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused

the constitutional violation." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 n. 10 (2nd Cir. 2004). Here, the FAC pleads that the City's failure to train caused the constitutional violations about which Mr. Sherwood complains. *See, e.g.,* FAC ¶¶ 177-182, 185, and 187. For example, the FAC points up the City's "deliberate indifference to the need[] to properly train….NYPD members — including the Individual Defendants — in the areas of illegally parked vehicles, 311 complaints related to them, responding appropriately to them, and refraining from retaliating against people who bring them," *see* FAC ¶ 181 and states that the facts pleaded in the FAC "call into question the adequacy of the NYPD's training regarding parking regulations applicable to NYPD vehicles and their enforcement, investigating and responding to 311 complaints, the need to refrain from harassing and/or retaliating against people who make 311 complaints, including about illegally parked vehicles owned or operated by NYPD members, City policies – at least on paper – about the treatment of private identifying information collected related to 311 complaints, the need to refrain from harassing and/or retaliating against people who make 311 complaints, the need to investigate complaints of and information about such harassment and/or retaliation, among other topics," *see* FAC ¶ 182. Those, and the other, allegations in the FAC are sufficient, for pleading purposes, to establish Defendant City's failure to train.

> ### *iii.   The FAC adequately pleads Defendant City's failure to supervise.*

Finally, the FAC adequately pleads that Defendant City has failed to supervise the Individual Defendants (and other NYPD members) related to properly investigating and responding to 311 complaints, the need to refrain from harassing and/or retaliating against people who make 311 complaints, including about illegally parked vehicles owned or operated by NYPD members, and related City policies. *See, e.g.,* FAC ¶¶ 11-18, 54-56, 68-86, 99-123, 127-145, 162-163, 177-187.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendants' partial

motion to dismiss in its entirety.

DATED:          March 13, 2023
                    Brooklyn, New York

_____/s/_____
**Gideon Orion Oliver**
277 Broadway, Suite 1501
New York, NY 10007
Gideon@GideonLaw.com
(718) 783-3682

J. Remy Green[9]
**COHEN&GREEN P.L.L.C.**
1639 Centre St., Suite 216
Ridgewood, New York 11385
Remy@FemmeLaw.com
(929) 888-9480

---

[9] Law Student Regina Yu, who is not yet the member of any bar, provided immeasurable help in preparing these papers.

25