UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JUSTIN SHERWOOD,

                Plaintiff,

   - against -

THE CITY OF NEW YORK, *et al.,*

                Defendants.

------------------------------------------------------------------------X

**MEMORANDUM OF
LAW IN OPPOSITION
TO PENDING
MOTIONS TO
DISMISS (ECF 46-47, 49-
51)**

22-cv-7505 (BMC)

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY  10007
Gideon@GideonLaw.com
(718) 783-3682

J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre St., Suite 216
Ridgewood, New York 11385
Remy@FemmeLaw.com
(929) 888-9480


*Co-Counsel for Plaintiff Justin Sherwood*

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

I.   The Moving Defendants' Arguments for Dismissal of Mr. Sherwood's First Amendment

Retaliation Claims Fail. ....................................................................................................... 3

    A.   Mr. Sherwood engaged in protected conduct ........................................................ 4

    B.   The FAC adequately pleads the required causation and retaliatory motive. ........... 4

    C.   The FAC adequately pleads that the Moving Defendants' conduct caused a chill and First

    Amendment injury. .................................................................................................. 6

       **i.   Dispositively, the harm here is the kind of harm that the Second Circuit has said**

       **may supplant any requirement to show actual chill.** ........................................ 8

       **ii.   The Moving Defendants injured Plaintiff.** .............................................. 10

       **iii.   The Moving Defendants' challenged actions, are — by design — and, in any**

       **event, amount to, a blizzard of chill.** ...................................................... 11

    D.   The Moving Defendants' actions also constitute a burden on First Amendment rights,

    standing alone. ....................................................................................................... 12

    E.   If the Court grants any part of the Moving Defendants' motion to dismiss Plaintiff's First

    Amendment-based claims, it should dismiss without prejudice .................................. 13

i

II.     The FAC Does Not State a Stand-Alone Fourteenth Amendment-Based Claim ..................... 13

III.    The Court Should Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims if the Court Dismisses all of Plaintiff's Federal Claims ....................................................... 14

CONCLUSION ............................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bart v. Telford*,
  677 F.2d 622 (7th Cir. 1982) ................................................................6, 7, 10

*Cain v County of Niagara*,
  2022 US Dist LEXIS 38140, No. 20-CV-1710S (WDNY Mar. 2, 2022) ....................... 12

*Cox v. Warwick Valley Cent. Sch. Dist.*,
  654 F.3d 267, 272 (2d Cir. 2011) ................................................................5

*Crawford–El v. Britton*,
  951 F.2d 1314 (D.C. Cir. 1991) ................................................................7

*Cummings v Missouri*,
  4 Wall [71 US] ................................................................ 11

*Curley v. Village of Suffern*'s,
  268 F.3d 65, 73 (2d Cir. 2001) ................................................................7

*Dabney v Maddock*,
  2011 US Dist LEXIS 153935, No. 9:10-CV-0519 (GTS) (DEP) (NDNY Nov.
  29, 2011) ................................................................9

*Di Lello v Coviello*,
  2022 US Dist LEXIS 8641, No. 20 ................................................................9

*Dixon v. Brown*,
  38 F.3d 379 (8th Cir. 1994) ................................................................8

*Dorsett v. Cty. of Nassau*,
  732 F.3d 157 (2d Cir. 2013) ................................................................2, 7, 10

*Dougherty v Town of N. Hempstead Bd. of Zoning Appeals*,
  282 F3d 83 (2d Cir 2002) ................................................................3

*Gandhi v NY State Unified Ct. Sys.*,
  2021 US Dist LEXIS 183938, No. 01:20-CV-0120 (LEK) (NDNY Sep. 27, 2021) ....................4

*Gilbert v Stony Brook Univ.*,
  2022 US Dist LEXIS 24355, No. 21-cv-2273 (BMC) (EDNY Feb. 9, 2022) ....................5

*Gill v Pidlypchak*,
  389 F3d 379 (2d Cir 2004) ................................................................6, 8, 10

*Healy v. James,*
   408 U.S. 169 (1972) ........................................................................................................... 10, 11

*Keenan v. Tejeda,*
   290 F.3d 252 (5th Cir. 2002) ...................................................................................................... 7

*Kerman v City of NY,*
   261 F3d 229 (2d Cir 2001) ......................................................................................................... 9

*Lacey LLC v. Maricopa County,*
   693 F.3d 896 (9th Cir. 2012) (en banc) ...................................................................................... 7

*LaVertu v Town of Huntington,*
   2014 US Dist LEXIS 165701, No. 13-CV-4378 (SJF)(SIL) (EDNY Oct. 7, 2014) ................... 7, 8

*Marom v City of NY,*
   2016 US Dist LEXIS 28466, No. 15-cv-2017 (PKC) (SDNY Mar. 7, 2016) ................................. 4

*Pluma v. City of New York,*
   2015 WL 1623828 (SDNY March 31, 2015) ............................................................................ 2, 7

*Raymond v City of NY,*
   317 F Supp 3d 746 (SDNY 2018) ................................................................................................ 4

*Schmidt v Kosinski,*
   2022 US Dist LEXIS 80205, No. 22-cv-2210 (BMC) (EDNY May 3, 2022) ............................... 11

*Smith v. Plati,*
   258 F.3d 1167 (10th Cir. 2001) ................................................................................................... 7

*Specht v City of NY,*
   15 F.4th 594 (2d Cir 2021) .......................................................................................................... 2

*State v Wilson,*
   268 P3d 506 (Kan Ct App 2012) ................................................................................................. 6

*Tabbaa v Chertoff,*
   509 F3d 89 (2d Cir 2007) ...................................................................................................... 10, 11

*Thaddeus-X v. Blatter,*
   175 F.3d 378 (6th Cir. 1999) ....................................................................................................... 7

*Troy v City of NY*
   (2014 US Dist LEXIS 136339, at *17, No. 13-cv-5082 (AJN) (SDNY Sep. 25,
   2014)) ........................................................................................................................................... 6

*United States v Rowson,*
   2023 US Dist LEXIS 13832 (SDNY Jan. 26, 2023) ..................................................................... 6

*United States v White,*
   2010 US Dist LEXIS 9603, No. 7:08-CR-00054 (WD Va Feb. 4, 2010) ..........................................6

*Williams v Novak,*
   2018 US Dist LEXIS 135423, at *55-56, No. 9:16-CV-1211 (GTS/TWD)
   (NDNY Aug. 9, 2018). ...................................................................................................................9

*Zherka v. Amicone,*
   634 F.3d 642 (2d Cir. 2011) ...........................................................................................................7

## Other Authorities

Fed.R.Civ.P. 9(b) ...................................................................................................................................3

Fed.R.Civ.P. 12(b)(6) ...........................................................................................................................1

Fed.R.Civ.P. 12(c) ................................................................................................................................1

U.S. Const. amend I....................................................................................................................... *passim*

U.S. Const. amend. XIV ................................................................................................................. 12

## PRELIMINARY STATEMENT

Plaintiff Justin Sherwood submits this Memorandum of Law in opposition to the pending motions to dismiss by Defendants Detective Samantha Sturman (*see* ECF 46 and 47, the "Sturman MOL")) and Defendants John Madera and Arthur Sturman (the "Madera Defendants") (*see* ECF 49-50, 51, the "Madera MOL").

The Madera Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(c). Specifically, the Madera Defendants move to dismiss Plaintiff's First Amendment-based 1983 claims because, they claim, the FAC does not adequately plead that the Madera Defendants "adversely affected Plaintiff's speech or caused him concrete harm," *see* Madera MOL Point I pp. 4-7, and argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, *see* Madera MOL Point II pp. 7-9.

Defendant Sturman moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Specifically, Defendant Sturman moves to dismiss Plaintiff's First Amendment-based claims, *see* Sturman MOL Point I pp. 5-10, and argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, *see* Sturman MOL Point III p. 11, and also argue that the Court should dismiss Plaintiff's Fourteenth Amendment-based claim, *see* Sturman MOL Point II p. 10.

As seen below, Plaintiff opposes Defendant Sturman's and the Madera Defendants' (collectively, the "Moving Defendants") motions in their entirety.

## STATEMENT OF FACTS

For a full statement of facts, Mr. Sherwood respectfully refers the Court to the First Amended Complaint ("FAC", ECF 26) and the documents referred to and incorporated by reference therein. Briefly, however, as seen in the FAC, at all times relevant herein, Mr. Sherwood has made complaints reporting individuals – including members of the New York City Police Department ("NYPD") – who park illegally in bike lanes, sidewlaks, and bus stops in downtown

1

Brooklyn. *See, e.g.,* FAC ¶ 1, 4-5, *et seq.* In several instances, NYPD members have harassed and

retaliated Mr. Sherwood in response. *See, e.g.,* FAC ¶¶ 7-10., 48-122.

For example, on August 13, 2021, Defendant Tiagom Reis responded 311 complaints Mr.

Sherwood made that day about illegally parked vehicles in the vicinity of the NYPD's 84th Precinct

and/or TD 30 by calling him, refusing to give his name, and hanging up. FAC ¶ 48. The City's

Civilian Complaint Review Board ("CCRB") eventually substantiated Abuse of Authority and

Discourtesy allegations related to the incident, recommending discipline. FAC ¶¶ 49-51.

By way of further example, on August 26, 2021, Defendant Detective Samantha Sturman

responded to 311 complaints Mr. Sherwood made that day about illegally parked vehicles in the

vicinity of the NYPD's 84th Precinct and/or TD 30 by calling and arguing with him, ending the call

by yelling, "Stop calling, dickhead!" FAC ¶¶ 52-53. The City's CCRB eventually substantiated

allegations of Offensive Language and Discourtesy against Defendant Detective Sturman related to

the incident, recommending discipline. FAC ¶¶ 54-56.

Additionally, on September 10, 2021, Defendant NYPD Officer John Madera responded to

311 complaints Mr. Sherwood made that day about illegally parked vehicles in the vicinity of the

NYPD's 84th Precinct and/or TD 30 by calling Mr. Sherwood from a blocked number, falsely

identifying himself as "Josh Hader" – a City 311 operator – and falsely stating that, because Mr.

Sherwood was submitting multiple complaints, he might be barred from submitting 311 complaints

in the future. FAC ¶¶ 57-66. The City's CCRB's CCRB eventually substantiated allegations of

Discourtesy, Abuse of Authority, and Making False Statements related to the incident,

recommending discipline. FAC ¶¶ 75-78.

Moreover, on October 18, 2021, Defendants Samantha Sturman and Arthur Sturrman

responded to  311 complaints Mr. Sherwood made that day about illegally parked vehicles in the

vicinity of the NYPD's 84th Precinct and/or TD 30 by texting Mr. Sherwood from a secret, non-

NYPD phone number the threat: "Keep fucking around" as well as by repeatedly calling him frtom a blocked number. FAC ¶¶ 88-96. The City's CCRB's CCRB eventually substantiated allegations of Abuse of Authority and Discouresty against both Sturman Defendants related to the incident, recommending discipline. FAC ¶¶ 99-100, 106-108, 121-122.

**ARGUMENT**

**I.      The Moving Defendants' Arguments for Dismissal of Mr. Sherwood's First Amendment Retaliation Claims Fail.**

Time and again, the Second Circuit has emphasized that "possible governmental misconduct is a legitimate and an important topic of public concern," such that actions alleging retaliation for the reporting of such conduct are at the core of what the federal Civil Rights Act protects. *See, e.g., Specht v City of NY*, 15 F.4th 594, 601 (2d Cir 2021). For a private citizen engaged in petitioning activity, a First Amendment retaliation claim is well pled when a plaintiff pleads that (1) they were exercising a right protected by the First Amendment; (2) the challenged actions were motivated or substantially caused by exercise of that right; and (3) the Defendant's actions caused them some injury. *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

The Madera Defendants only challenge whether Plaintiff has adequately pleaded the third prong. The Sturman MOL also argues in sum that Defendant Sturman did not take any adverse action against Mr. Sturman. Although the Moving Defendants all focus on whether or not Plaintiff's speech was actually chilled — and incorrectly argue that it was either not chilled at all, or not sufficiently chilled to support Plaintiff's claim — a plaintiff may show either chilled speech or "some other concrete harm." *Pluma v. City of New York*, 2015 WL 1623828, at *7 (SDNY March 31, 2015). In *Pluma,* for example, the harm included being pepper sprayed. In this connection, "'[c]hilled speech is not the *sine qua non* of a First Amendment claim" – rather, a plaintiff may show "*either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm.'" *Pluma,* 2015 WL 1623828, at *7 (citation omitted) (emphasis in original); *see*

3

*also id.* ("Here, although plaintiff pleads little by way of chilling, he clearly alleges a concrete injury caused by the officers' pushing and deploying pepper spray, which satisfies the standard recently articulated by the Court of Appeals"). As seen below, here, Mr. Sherwood has adequately pleaded that he engaged in protected conduct, that the Moving Defendants retaliated against him because he did so, and that their actions caused him both concrete harm and actually chilled his engagement in protected conduct.

### A.  Mr. Sherwood engaged in protected conduct.

The Moving Defendants do not contest that Mr. Sherwood's 311 complaints were protected conduct. *See* Sturman MOL p. 6; Madera MOL pp. 4-7. Nor could they. It is beyond cavil that citizens' "rights to complain to public officials and to seek administrative and judicial relief from their actions" are protected by the First Amendment. *Dougherty v Town of N. Hempstead Bd. of Zoning Appeals*, 282 F3d 83, 91 (2d Cir 2002). Mr. Sherwood's protected conduct was core expressive and petitioning activity: He was filing complaints for redress with 311, an arm of the government. There can be no question Mr. Sherwood engaged in protected conduct.

### B.  The FAC adequately pleads the required causation and retaliatory motive.

To the extent Defendant Sturman argues – which she does almost in passing – that Plaintiff has not adequately pleaded causation or retaliatory motive, *see* Sturman MOL pp. 9-10, the Court should reject those arguments. In sum, Defendant Sturman argues Mr. Sherwood has not adequately pleaded that he was injured at all, so Defendant Sturman could not have caused him injuries. However, because, as seen in Point I(C) below, the Moving Defendants *did* cause Mr. Sherwood concrete injury *and* chilled his protected conduct. And beyond that, the FAC adequately pleads the required causation and retaliatory motive. Defendant Sturman's argument therefore fails.

Under Fed.R.Civ.P. 9(b), "malice, intent, knowledge and other conditions of mind . . . may be averred generally." "The ultimate question of retaliation involves a defendant's motive and intent,

both difficult to plead with specificity in a complaint. … It is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002). Plaintiff has done so in this matter.

Here, as is the case "generally, temporal proximity is strong circumstantial evidence of improper intent." *Raymond v City of NY*, 317 F Supp 3d 746, 773 (SDNY 2018). "Plaintiffs may sufficiently plead a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action" without more, at least for the purposes of a motion to dismiss. *Id.; see also, Marom v City of NY*, 2016 US Dist LEXIS 28466, at *59, No. 15-cv-2017 (PKC) (SDNY Mar. 7, 2016) (denying motion to dismiss because "support for the allegation of a retaliatory motive ar[ose] from the proximity in time between plaintiffs' expressive conduct and their arrests"); *Gandhi v NY State Unified Ct. Sys.*, 2021 US Dist LEXIS 183938, at *25, No. 01:20-CV-0120 (LEK) (NDNY Sep. 27, 2021) (a little over a month provided "strong circumstantial evidence of improper intent"). Here, the temporal proximity is measured in minutes and hours — a far cry from the multiple months that courts find can break the causal inference on a motion to dismiss. *Id.* at 774; 777 (events within the same month were "in sufficient temporal proximity to support an inference of causal connection" for one retaliation claim; while four months between complaint and alleged retaliation too attenuated to plausibly state claim as to another).

The Moving Defendants' – including Defendant Detective Sturman's – conduct, in contacting Mr. Sherwood on August 26, 2021, September 10, 2021, and October 18, 2021, as alleged in the FAC, followed closely on the heels of Mr. Sherwood's protected conduct of filing 311 complaints on those same dates. And, based on both the content of, and context surrounding, the communications, a reasonable jury could find that each of the Moving Defendants contacted Mr. Sherwood in response to – and retaliation for – his 311 complaints, and that they did so with sufficient retaliatory motive for Mr. Sherwood to state a First Amendment-based claim. Thus, even

without the presumption of causation and retaliation that comes with the very, very short period at issue here, the above more than suffices on a motion to dismiss for a jury to infer both causation and retaliatory motive.

### C. The FAC adequately pleads that the Moving Defendants' conduct caused a chill and First Amendment injury.

The Moving Defendants argue that that what they are alleged to have done in the FAC was simply not bad enough to rise to any cognizable harm or concrete First Amendment chill.

In so arguing, the Moving Defendants not only ignore that a reasonable jury could find that the Moving Defendants' use of protected personal information from the City's 311 system about Mr. Sherwood to call him as part of the required police response, and engaging in harassing and retaliatory conduct using that protected personal information, in violation of applicable City rules and regulations governing the treatment of such personal information, was calculated to harass and intimidate Mr. Sherwood, or had the predictable result of doing so, but also elide the Second Circuit's standards for First Amendment retaliation in a way that makes the applicable standards sound more complicated than they are, in fact. As this Court has explained:

> To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: "(1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).

*Gilbert v Stony Brook Univ.*, 2022 US Dist LEXIS 24355, at *29, No. 21-cv-2273 (BMC) (EDNY Feb. 9, 2022). Those three elements are all that is required, and all are met on the facts here.

On the second element, the Moving Defendants clearly took adverse action against Mr. Sherwood. Their harassing and retaliatory calls, which frightened and otherwise caused Mr. Sherwood emotional injury, were harms in and of themselves, setting aside the question of chill.

Each of their calls was among a series of harassing and retaliating calls made by NYPD members to Mr. Sherwood, as described in the FAC. So, in terms of chill — even if that were required as part of the second element — as the Court noted at the initial pretrial conference, the "chill" here might as well be a blizzard. Simply put, particularly given the City's policy that employees who acquire personal identifying information related to 311 complaints, such as the names and contact information of complainants, are required to keep that information confidential, and only to use it for authorized, official purposes, a NYPD member's calling a 311 complainant, discouraging them or directing them not to make further complaints, falsely identifying themselves, threatening them, or repeatedly calling and hanging up, considered alone as well as in the context of the other facts pleaded in the FAC, including Mr. Sherwood's experiences with other NYPD members from the 84th Precinct, a reasonable jury could conclude that the Moving Defendants' conduct amounted harassing and/or retaliatory acts that caused their own harms and/or cast a chill on Mr. Sherwood's willingness and ability to engage in future, similar protected conduct.

More fundamentally, the Moving Defendants' arguments fail to take seriously the power the NYPD wields[1] — and its responsibilities to enforce the law and City policies about privacy and treating civilian complainants with "courtesy, professionalism, and respect." Their argument, at its core, is government actors receiving a First Amendment protected petition may respond by engaging in conduct that would be considered threatening or harassing if a private citizen engaged in

---

[1] In this connection, Defendants' citation to Judge Nathan's unpublished decision in *Troy v City of NY* (2014 US Dist LEXIS 136339, at *17, No. 13-cv-5082 (AJN) (SDNY Sep. 25, 2014)) is a red herring, because it deals with an entirely different kind of situation — and a different kind of comment. In the course of a long series of complaints and multiple conversations, an officer asked the plaintiff there to "stop babbling" (as the Court noted, "rudely"), but continuing to take information and perform the job of taking the complaint. *Id.* at *16-17. But a rude comment in passing is different in kind than what happened here. Consider:  Heavy breathing during an ordinary conversation may be strange — indeed, it may even be a basis for suspicion that someone is nervous (*United States v Rowson*, 2023 US Dist LEXIS 13832, at *9 (SDNY Jan. 26, 2023)) —— but when it is the **sole** content of a phone call, it takes on another quality entirely. *See, e.g., United States v White*, 2010 US Dist LEXIS 9603, at *15, No. 7:08-CR-00054 (WD Va Feb. 4, 2010) (noting that "repeated late night phone calls complete with heavy breathing on the other end of the line would, in a commonsense interpretation, likely be considered intimidation" sufficient for criminal liability); *State v Wilson*, 268 P3d 506 (Kan Ct App 2012) (heavy breathing-only calls sufficed for stalking conviction because it is communication in a "manner that causes that person [receiving it] to fear for his or her personal safety").

it, as long as that response doesn't cause what they consider to be a quantifiable chill for the person sufficiently firm to bring a petition – such as preventing them altogether from making complaints going forward, and as long as the harassment doesn't move past what they consider "rudeness." Of course, that cannot be the case. Here, each harassing and retaliatory phone call and text message that Mr. Sherwood received from the Moving Defendants worked a concrete harm that went well beyond "rudeness." Setting that aside, though perhaps any single part of "the effect on freedom of speech may be small" in this case, "since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Bart v Telford*, 677 F2d 622, 625 (7th Cir 1982). That is, what is alleged here is "an entire campaign of harassment which though trivial in detail may have been" — and indeed, was — "substantial in gross." *Id.* Thus, and for the reasons below, Defendants' arguments fail.

> ### i. *Dispositively, the harm here is the kind of harm that the Second Circuit has said may supplant any requirement to show actual chill.*

"[D]efendants are correct that a plaintiff asserting First Amendment retaliation must allege some sort of harm, but they are wrong that this harm must, in all cases, be a chilling of speech." *Gill v Pidlypchak*, 389 F3d 379, 383 (2d Cir 2004).[2] As seen above, a plaintiff may show *either* chilled speech or "*some other concrete harm,*" *Pluma v. City of New York*, 2015 WL 1623828, at *7 (SDNY March 31, 2015) (emphasis added), or both. In jumping to attacking injury (measured by chill, in their estimation) and chill, the Moving Defendants elide past the fact that while actual chill is often required, "recent cases have concluded that the chilling requirement applies only where no other harm is alleged." *LaVertu v Town of Huntington*, 2014 US Dist LEXIS 165701, at *11, No. 13-CV-4378

---

[2] There is something of a circuit split on this issue. The Ninth and Tenth circuits explicitly do not consider whether an individual was chilled at all. *See, Lacey LLC v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc) and *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001). The Fifth Circuit focuses primarily on actual chill. *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002). And meanwhile, the Sixth, Seventh, and D.C. Circuits use a more flexible test that does not require actual chill whenever there is some concrete injury. *See Crawford–El v. Britton*, 951 F.2d 1314, 1322 (D.C. Cir. 1991); *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999); and *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

(SJF)(SIL) (EDNY Oct. 7, 2014) (collecting cases), *adopted in full at* 2014 US Dist LEXIS 164828, at *1 (EDNY Nov. 24, 2014). That is because, as the Second Circuit noted approvingly, "other forms of harm have been accepted in place of this 'actual chilling' requirement." *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011), *citing Gill*, 389 F3d at 382. Thus, while Defendants rely on *Curley v. Village of Suffern*'s formulation of the requirement to show chill (268 F.3d 65, 73 (2d Cir. 2001), the Second Circuit has explicitly cautioned that the *Curley* formulation "was an imprecise statement of law." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Rather, as set out above, "[c]hilled speech is not the *sine qua non* of a First Amendment claim. A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Id.* (emphasis in original). Since Defendants' authority for the test they put forward is essentially only the "imprecise statement of law" in *Curley*, the Court may safely disregard Defendants' demand Plaintiff satisfy that imprecisely framed version of the test.

On the merits, the FAC pleads both concrete harm and chilled speech. As the Second Circuit has explained, the chill requirement is often standing in for the fact that the "essential burden is to show that [the plaintiff] was punished" for their speech. *Gill*, 389 F3d at 382. Thus, the canonical examples of cases where no chill or special injury (beyond the retaliation itself) is required are prison punishment and employment cases because "the injury 'inheres in the retaliatory conduct itself.'" *Id., quoting, in parenthesis, Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994). "Plaintiffs in these types of cases need not show 'adverse action' (say, keeplock or firing) *plus* chilling." *Id.* (emphasis in original).

Here, in addition to rising to the level of harm on its own, the alleged conduct was part of a blizzard (to use the Court's phrase) of retaliatory conduct. Such a "pattern of intimidation" has been recognized as one of the situations that fits the *Gill/Zherka* exception. *LaVertu*, 2014 US Dist LEXIS 165701, at *11, citing MacPherson v Town of Southampton*, 2013 US Dist LEXIS 62356, at *14,

No. 08 CV 4113 (DRH) (ARL) (EDNY May 1, 2013). That is, the harm that inheres in the kind of storm of intimidation at issue here is inherently chilling. Indeed, were it otherwise, the kinds of threats made to people who dare accuse the NYPD of illegal parking — among other things, "I'm going to kill you"; "I'm going to fuck the shit out of you [and your wife] …And if you keep them little sloppy sexy little kids around I'm going to get them too"; "Stop calling, dickhead"; threats to bar submitting complaints to 311 altogether, and an ominous "Keep fucking around" (FAC ¶¶ 53, 65, 94, 142) — would never see the light of day, because they would have succeeded in their intended chill. When retaliatory threats are threats of this kind, in this volume, "the fact that a particular plaintiff … responded to retaliation with greater than ordinary firmness does not deprive him of a cause of action." *Gill*, 389 F3d at 384. Otherwise, the First Amendment right to petition would be a right without any content.

### ii.   The Moving Defendants injured Plaintiff.

Even if the Court does not find this case fits within the *Gill* framework, as set out above, the storm of retaliation that Mr. Sherwood has faced just for trying to get members of the NYPD to follow the law they are tasked with enforcing has caused him legally cognizable injuries. The individual acts of retaliation scared and chilled him. He lives with (reasonable, given what has happened) fear that Defendants' retaliation will escalate. FAC ¶ 10. He has endured unreasonable emotional distress for simply trying to report flagrant, rampant, illegal parking by members of the 84th Precinct. *See, e.g.,* FAC ¶¶ 10, 169, 188, 192.

It is well-settled that — at least when the threat is sufficiently "direct and specific" — a threat by an officer "to abuse his authority" in retaliation for petitioning activity is actionable. *Di Lello v Coviello*, 2022 US Dist LEXIS 8641, at *11, No. 20 CV 9180 (VB) (SDNY Jan. 18, 2022); *cf. also, Kerman v City of NY*, 261 F3d 229, 233 (2d Cir 2001) (statement "I'm going to teach you a lesson . . . I'll give you something to sue for" demonstrated retaliatory motive for other conduct). And, as

other courts have emphasized, "[a] pattern of harassment and vague threats may be considered collectively" in analyzing a retaliation claim. *Williams v Novak*, 2018 US Dist LEXIS 135423, at *55-56, No. 9:16-CV-1211 (GTS/TWD) (NDNY Aug. 9, 2018). Indeed (under the significantly higher bar that exists for prison retaliation), even where "potentially none of th[e individual] allegations rises to a level sufficient to support a finding of adverse action, collectively they [can] suffice to constitute adverse action." *Dabney v Maddock*, 2011 US Dist LEXIS 153935, at *12, No. 9:10-CV-0519 (GTS) (DEP) (NDNY Nov. 29, 2011), *adopted in full at* 2012 US Dist LEXIS 30481 (NDNY Mar. 7, 2012). By failing to analyze the Moving Defendants' harassment in their full context, the Moving Defendants attempt to avoid having to grapple with Plaintiff's actual claim.

Plaintiff petitioned 311 for redress of a grievance about the conduct of all the officers at the 84th Precinct. And collectively, the officers at the 84th Precinct made a panoply of threats — sending the unambiguous message that if Mr. Sherwood "[kept] fucking around" (FAC ¶ 94), they would take other abusive next steps. Mr. Sherwood has been, of course, injured by that. And the fact that he is strong enough to keep saying, notwithstanding illegal threats, that police ought to follow the law is of no moment to that injury. As former Judge Posner's opinion in *Bart* spelled out sagely, "an entire campaign of harassment which though trivial in detail[,] may have been substantial in gross." *Bart,* 677 F2d at 625. And that is so because "there is no justification for harassing people for exercising their constitutional rights." *Id.*

### iii. The Moving Defendants' challenged actions, are — by design — and, in any event, amount to, a blizzard of chill.

As noted above, the Moving Defendants wrongly demand Plaintiff show actual chill rather than some other harm (and/or chill). *Dorsett*, 732 F.3d at 160. That is, "the fact that a particular plaintiff … responded to retaliation with greater than ordinary firmness does not deprive him of a cause of action." *Gill,* 389 F3d at 384. But here, the actions at issue are a blizzard of chill anyway. As discussed at length elsewhere, the Moving Defendants' conduct was part of an extensive pattern of

11

harassment and/or retaliation with the purpose and/or effect of ending Mr. Sherwood's protected

conduct. To try to intimidate Plaintiff any those like him from reporting, together, NYPD members

have called people reporting parking violations at all hours, threatened death and sexual assault of

peoples' children, told them to "keep fucking around" and find out what would happened, and so

on. In that context, "the prospect of being singled out for such extensive [harassment] could

reasonably deter others" from making similar speech. *Tabbaa v Chertoff*, 509 F3d 89, 102 (2d Cir

2007).

### D. The Moving Defendants' actions also constitute a burden on First Amendment rights, standing alone.

The Moving Defendants' actions as described in the FAC were designed to, and did, chill

speech. However, what the Moving Defendants did here is ***also*** a stand-alone interference with Mr.

Sherwood's fundamental rights protected by the First Amendment. It is well-settled that "the

Constitution's protection is not limited to direct interference with fundamental rights." *Healy v.

James*, 408 U.S. 169, 181-84 (1972). Rather, in the associational context, for example, "[g]overnment

action can constitute a direct and substantial interference with associational rights even if there is no

prior restraint and no clear chilling of future expressive activity." *Tabbaa v Chertoff*, 509 F3d 89, 101

(2d Cir 2007) (noting "[i]t did not matter that the plaintiffs in *Healy* had not demonstrated a chilling

effect on their desire or ability to associate in the future, or that they could freely hold their meetings

and distribute their materials off campus; rather, there was a substantial burden because of the

significant 'disabilities imposed' by the defendant's actions.").

If the City established an official policy that any person who wanted to report illegal parking

by the NYPD had to field dozens of threatening phone calls and would receive those calls at all

hours, the policy would be a burden the right to petition and therefore unconstitutional (regardless

of whether a particular plaintiff was deterred — because having run the gauntlet to simply file a

petition would be injury enough). It is well-settled when it comes to First Amendment burdens that

"what cannot be done directly cannot be done indirectly," since "[t]he Constitution deals with substance, not shadows." *Cummings v Missouri*, 4 Wall [71 US] 277, 325 (1867). As set out in the complaint, and in particular, in the various articles incorporated therein (and presumed true), the 84th Precinct has created exactly that burden: "Users of 311 [have] received barrages of phone calls in the middle of the night from blocked phone numbers after submitting reports about cars obstructing bike lanes, using dubious parking placards or flouting other traffic laws." FAC ¶ 139. Members of the public frequently report receiving threats immediately — in as few as 15 minutes (FAC ¶ 151) — from making 311 complaints. *See also,* FAC ¶¶ 123-163.

In that context, the Moving Defendants' actions — amounting to, as they have, an automatic, if/then response to a person reporting illegal conduct by NYPD drivers —- should (perhaps must) be seen as a direct burden on the right to petition for redress. And the Moving Defendants cannot meet the burden to show, as they must once they burden a fundamental right, that their actions serve government ends under strict scrutiny. *Compare, by analogy, Schmidt v Kosinski*, 2022 US Dist LEXIS 80205, at *5, No. 22-cv-2210 (BMC) (EDNY May 3, 2022) (strict scrutiny for statute that places a burden on the right to petition for ballot access).

### E. If the Court grants any part of the Moving Defendants' motion to dismiss Plaintiff's First Amendment-based claims, it should dismiss without prejudice.

Finally, even if the Court grants any part of the Moving Defendants' motions to dismiss Plaintiff's First Amendment-based claims, it should only grant dismissal without prejudice. Plaintiff, at this stage, has almost no meaningful discovery, does not have the investigative files, lacks information beyond what is public and common-sense inferences about whether the various members of the 84th Precinct were acting in intentional concert. Thus, Plaintiff respectfully requests any dismissal be without prejudice.

### II. The FAC Does Not State a Stand-Alone Fourteenth Amendment-Based Claim.

To the extent that the Sturman MOL argues that Plaintiff has "failed to assert any violations of his procedural or substantive due process rights under the Fourteenth Amendment," at p. 10, the FAC does not plead a stand-alone Fourteenth Amendment-based claim. Rather, as is counsel's usual practice, the headings of each 1983 claim arising from the violation of a particular constitutional right also mention the Fourteenth Amendment because it is through the incorporation of its due process clause that those federal constitutional rights are applicable to municipalities. *See, e.g., Cain v County of Niagara*, 2022 US Dist LEXIS 38140, at *20-21, No. 20-CV-1710S (WDNY Mar. 2, 2022). In other words, there is no underlying substantive claim that Defendants violated Plaintiff's Fourteenth Amendment-based rights asserted, and so there is no such claim to be dismissed. Rather, Plaintiff's claims under the bill of rights amendments — as they must — pass through the Fourteenth Amendment.

### III. The Court Should Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims if the Court Dismisses all of Plaintiff's Federal Claims.

If the Court dismisses all of Plaintiff's federal claims, the Court should exercise supplemental jurisdiction over Plaintiff's remaining state law claims. The Court should reject the Moving Defendants' arguments (*see* Madera MOL pp. 7-9, Sturman MOL p. 11) to the contrary. As Defendants point out, the decision as to whether to exercise supplemental jurisdiction where the Court has dismissed claims over which it has original jurisdiction is entirely discretionary. Here, the Court should exercise that discretion to keep the case, as doing so would serve values of judicial economy, convenience, fairness, and comity. For example, as the Court is aware, the case is on a "rocket docket" under which discovery is to be completed within a month. Plaintiff anticipates raising serious discovery disputes with the Court next week. By the time the Court rules on those disputes, and the three pending motions to dismiss, the Court, and the parties, will have spent significant time, energy, and resources on resolving discovery disputes and legal issues related to the litigation. Forcing Plaintiff to start over by re-pleading the same state law claims arising from the

14

same facts, in another forum, would undermine, rather tan serve, judicial economy, convenience, fairness, and comity. To the extent the Madera Defendants argue Plaintiff has raised "novel and unique questions of state law", *see* Madera MOL pp. 8-9, the Court should reject those arguments both because they sound in abstention, not the question of whether to exercise supplemental jurisdiction, and because they are red herrings. The bottom line on this point is that the Court will have discretion to determine whether to retain jurisdiction over Plaintiff's state law claims if it dismisses all of Plaintiff's federal claims. Because this is an important case in which the Court and the parties have invested, and will have invested, significant time and energy, the Court should keep the case even if it dismisses the federal claims.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that the Court deny the Moving Defendants' partial motion to dismiss in its entirety.

DATED:          May 11, 2023
                Brooklyn, New York

                                    _____/s/_____
                                    **Gideon Orion Oliver**
                                    277 Broadway, Suite 1501
                                    New York, NY  10007
                                    Gideon@GideonLaw.com
                                    (718) 783-3682

                                    J. Remy Green
                                    **COHEN&GREEN P.L.L.C.**
                                    1639 Centre St., Suite 216
                                    Ridgewood, New York 11385
                                    Remy@FemmeLaw.com
                                    (929) 888-9480

15