```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
     -----------------------------x
3                                          22-CV-7505(BMC)
     JUSTIN SHERWOOD,
4                                          United States Courthouse
              Plaintiff,                   Brooklyn, New York
5
              - versus -                   May 30, 2023
6                                          3:00 p.m.
     THE CITY OF NEW YORK, ET AL,
7
              Defendants.
8
     -----------------------------x
9
              TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
10               BEFORE THE HONORABLE BRIAN M. COGAN
                   UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES

13   Attorneys for Plaintiff: COHEN & GREEN P.L.L.C
                              1639 Centre Street, Suite 216
14                            Ridgewood, New York 11385
                              BY:  GIDEON ORION OLIVER, ESQ.
15                                 REMY GREEN, ESQ.

16

17
     Attorney for Defendants: NEW YORK CITY LAW DEPARTMENT
18   The City of New York,    100 Church Street
     Officer Sturman, and     New York, New York 10007
19   Officer Reis             BY:  JOHN EDMUND SCHEMITSCH, ESQ.

20

21

22   Attorney for Defendant:  WORTH, LONGWORTH, & LONDON, LLP
     Officer John Madera      111 John Street
23                            Suite 640
                              New York, New York 10038
24                            BY:  DOUGLAS LABARBERA, ESQ.

25
```

```
 1    Attorney for Defendant:   KARASYK & MOSCHELLA, LLP
      Det. Samantha Sturman     233 Broadway, Suite 2340
 2                              New York, New York 10279
                                BY:  JOHN W. BURNS, ESQ.
 3

 4

 5

 6

 7

 8    Court Reporter:           LEEANN N. MUSOLF, RPR, CCR
                                Phone:  718-613-2489
 9                              Email:  lmusolf.edny@gmail.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Proceedings recorded by mechanical stenography.  Transcript
      produced by computer-aided transcription.
```

Proceedings

1        (All present via videoconference.)

2        THE COURTROOM DEPUTY:  Sherwood versus The City of

3  New York, et al.

4        Counsel, note your appearances, beginning with

5  Plaintiff counsel.

6        MR. OLIVER:  Gideon Oliver, cocounsel for Plaintiff.

7        MS. GREEN:  It's Remy Green joining Mr. Oliver, but

8  I won't be speaking.

9        MR. SCHEMITSCH:  John Schemitsch for Defendant

10  City of New York, Officer Sturman, and Officer Reis.

11        MR. LABARBERA:  Good afternoon, Your Honor.

12        Doug LaBarbera for Defendant New York City Police

13  Officer John Madera.

14        MR. BURNS:  Good afternoon, Your Honor.

15        John Burns on behalf of Detective Samantha Sturman.

16        THE COURT:  I really haven't had a chance to study

17  the letter you filed a half an hour ago.  I've read it, I

18  think I understand it, but what I'm going to do is go through

19  the discovery disputes and I will ask you, before I rule on

20  them, if it's still live or if, in fact, you have resolved

21  them.  I think I know as to some of them, but like I've said,

22  I have not had a chance to go over the letter in detail.

23        So, first, on the extension of time.  I am not

24  understanding why the defendants have produced 100 pages of

25  documents at this stage of the case.  What is the reason for

Proceedings

1  that?

2          MR. SCHEMITSCH:  Yes, Your Honor, I apologize for

3  any delay with that.  We did have a number of internal

4  extensions from both sides with document responses and

5  production --

6          THE COURT:  No, no, no, stop.  There is no such

7  thing as internal extensions, okay?  This is my case even more

8  than it's your case.  If there's a consensual extension, you

9  bring it to me and then I decide whether there's good cause to

10  allow it, because most of the time I don't.

11          So what is the good cause?  Because consent is not,

12  consent is not good cause.

13          MR. SCHEMITSCH:  I understand, Your Honor.  I

14  apologize.  I was sick a number of times over the last couple

15  of months and was out due to that.  The delay is primarily

16  because of the confidentiality stip at this point and we would

17  be prepared, within ten days, to produce responsive documents

18  following the entry of the confidentiality stipulation.

19          THE COURT:  Well, all right.  Let's skip ahead then

20  to the confidentiality stipulation.

21          As I understand it, the sticking point from the

22  defendants' perspective on that is that you don't want

23  disciplinary or grievance information about these officers

24  publicly disclosed or available to anyone; is that it?

25          MR. SCHEMITSCH:  That's it, Your Honor.

*LEEANN N. MUSOLF, RPR, Official Court Reporter*

Proceedings

1        THE COURT:  Okay.  Isn't there already a law that

2   they could get it through that would make it publicly

3   available?

4        MR. SCHEMITSCH:  A number of courts have found under

5   appeal of section 50(a), which is I believe the law you're

6   referring to, does not necessarily govern in terms of

7   confidentiality orders.  The Southern District --

8        THE COURT:  Well, yeah, I'm not bound by it; I agree

9   with that.  The law has no impact on discovery in a federal

10  action.  But my point is, what are you really giving up if

11  they can get the documents and use them publicly anyway?

12       MR. SCHEMITSCH:  Your Honor, not everything is

13  publicly accessible, as a primer, but we do believe,

14  essentially, the confidentiality order should be put in place

15  given that there's a lot of information in these documents as

16  to nonparties, as to investigations, and -- as well as

17  complaints issued by third parties.

18       THE COURT:  But all of that would come out under the

19  new statute, right?

20       MR. SCHEMITSCH:  Not everything, Your Honor, but

21  I --

22       THE COURT:  Okay.  Here's the deal:  You may -- we

23  will enter a protective order that allows you to designate

24  those things that are not publicly available under the new

25  statute.  God help us all if we have a fight about that.

Proceedings

1          Obviously, if the plaintiffs have the need -- if

2      Plaintiff has a need to challenge that, it will be challenged.

3          But I do want to ask the plaintiff, why do you need

4      public disclosure of these officers' misconduct?  The

5      appropriate misconduct for disclosure would be the conduct

6      that is introduced at trial, and there's no protection against

7      that.  So why do you care, except making the defendants' lives

8      harder like they've tried to make your client's life harder?

9          MR. OLIVER:  Thank you, Your Honor.

10          I mean, we care because the --

11          THE COURT:  You're a champion of the First

12     Amendment; is that right?

13          MR. OLIVER:  Well, no.  I mean, not so -- not even

14     so much.  It's always more basic than that.  We -- my

15     interpretation, and I do a lot of freedom of information law

16     practice, is, obviously, that law enforcement disciplinary

17     records are now presumptively public.  So my position is I

18     couldn't sign something that say -- that would designate them

19     as confidential, you know --

20          THE COURT:  Keep in mind, you don't have to sign it,

21     I just have to order it.

22          MR. OLIVER:  Of course, Your Honor.  And in response

23     to that, when we've had this dispute with the City in the

24     past, usually what the courts have ended up doing, and the

25     example we gave in the letter was Judge Gorenstein recently in

Proceedings

1  the Southern District, in sweeping litigations over the summer

2  of 2020 protests said no to sort of blanket-predesignations,

3  which is what defendants want to do; yes to if you have a good

4  faith basis, you designate it and then we can challenge it,

5  which is what we've proposed and what I think I hear

6  Your Honor is saying the Court is going to do, or might do.

7          THE COURT:  So I'm going to do that.  I'm going to

8  do that.

9          I will say that if the City wants to withhold

10 particular information that it thinks is not available

11 publicly, then you've got to do the equivalent of a privilege

12 law and tell us what the information is.  You want to go

13 through all that work, more power to you.  All right.  So

14 that's my ruling on the confidentiality order.

15          Now, having said that, I'm sympathetic if you were

16 sick.  I understand that people get sick especially these days

17 and it's hard to work, although I don't understand why you

18 couldn't get someone to cover for you for doc production, but

19 it's been slowed up, like, forever.

20          So what we're going to do is, within the next two

21 weeks, the plaintiff is going to take the defendants'

22 depositions.  If these newly disclosed documents require

23 taking those depositions a second time and I'm convinced of

24 that, and I think I will apply a low threshold because the

25 documents should have been produced, then the City will pay

*LEEANN N. MUSOLF, RPR, Official Court Reporter*

Proceedings

1   the plaintiff's attorneys' fees for those second depositions.

2          Now, you all are free to work out something else,

3   but if you're asking me to rule, that's what I am going to do.

4          Next, the TextNow subpoena.  That's still an issue?

5          MR. OLIVER:  Yes, Your Honor.  Although it's a

6   consent application, yes --

7          THE COURT:  Yeah, it's a consent application but I'm

8   not going to consent, okay?  I can't go around subpoenaing

9   foreign companies.  I have no subpoena power in Canada.

10         MR. OLIVER:  Our understanding, Your Honor, and this

11  is based on communications with TextNow, is that they'll honor

12  a so-ordered subpoena from a United States District Judge.

13         THE COURT:  You might be right about that.  Maybe

14  they would, but when I issue a subpoena, which is a command to

15  somebody to produce documents, it's not an invitation, it's a

16  command, I'm asserting the power of the United States Courts

17  against that foreign citizen and that is inconsistent with the

18  responsibilities of the Judiciary.

19         So you might figure it as, well, it's just a

20  formalistic, but there's more to it from my perspective.  I

21  don't care if the Canadian company voluntarily complies or

22  not, I'm not going to issue a subpoena that I know is improper

23  on its face and that I could never possibly enforce if the

24  company changed its mind and decided not to do that.

25         We have procedures for getting discovery from

*LEEANN N. MUSOLF, RPR, Official Court Reporter*

Proceedings

1    foreign companies, right?  We have the Hague Convention, we

2    have Letters Rogatory, there are several other devices that

3    you could use.  You can take a deposition at the U.S. embassy

4    in wherever they are in Canada, at the Consolate.  There are

5    all kinds of things you can do that they're doing as

6    voluntary, but don't pull me into what is essentially an

7    illegal act.  So I'm got going to do that.

8              MR. OLIVER:  Understood, Your Honor, and I didn't

9    mean to -- that's not what we meant to be doing and we -- I

10   hear you loud and clear.

11             THE COURT:  I know, and all this is, is a failure to

12   communicate.  You only saw it from your perspective but I have

13   a different perspective than yours which is one reason why,

14   when you make changes to the schedules, you need to bring me

15   into it.

16             Okay.  Now, on the motion to compel, are we still

17   fighting over Interrogatory One?

18             MR. SCHEMITSCH:  Plaintiff is unwilling to produce

19   that absent a confidentiality stipulation.  I believe their

20   position is that they're unwilling to produce any of the

21   responses absent a confidentiality stipulation on them.

22             THE COURT:  Okay.

23             Let me just ask the defendants to reverse the

24   question I had on the officers' information:

25             Why do you need this public?

Proceedings

1          MR. SCHEMITSCH:  Your Honor, we believe we're

2    entitled to this information --

3          THE COURT:  No, no, no, no, you're not -- you're

4    entitled to it if in the course of my discretion, I determine

5    it's appropriate for you to have it.  And if you can't give me

6    a single reason -- and you're going to get it.  We're not

7    talking about giving you the information, you're going to get

8    it.

9          The question is, for people who aren't directly

10   involved in the lawsuit, why should their addresses and phone

11   number be publicized, other than as a point of intimidation

12   brought by your clients on the plaintiff's family members?

13   Why?

14         MR. SCHEMITSCH:  Your Honor, to be clear, we have no

15   point of intimidation.

16         THE COURT:  Then why don't you want to keep it

17   confidential?  What is the gain for you in this lawsuit other

18   than intimidation?

19         MR. SCHEMITSCH:  There's no gain.  It appears that

20   Plaintiff's forestalling providing this information.

21         THE COURT:  He's forestalling because you won't

22   agree to keep it confidential and you can't give me a reason

23   why you won't keep it confidential other than your feeling of

24   entitlement, and that's not a very persuasive means or reason

25   for me to exercise my discretion in your favor.

Proceedings

1    So the confidentiality order will also protect that

2    information, although, of course, it will be disclosed to the

3    defendants -- to the plaintiffs -- to the defendants.

4    Okay.  Now, Interrogatories 11 and 12 and Document

5    Request 21; have the rulings that I've made settled those

6    issues?

7    MR. OLIVER:  Your Honor, Plaintiff, although --

8    although we don't think it's appropriate or relevant, we -- in

9    the issue - in the interest of marrying the issues,

10   Your Honor, we agreed as to meet and confer today, that we

11   would produce any responsive information if there is any if

12   the Court entered a confidentiality order.  So --

13   THE COURT:  Include in the protective order.  Let's

14   have it all in one place, okay?

15   MR. OLIVER:  Yes, Your Honor.  So, yes, we are

16   prepared to just -- to respond as long as we can do so

17   confidentially.

18   THE COURT:  Okay.  I understand because your point

19   about, well, it's not admissible in evidence at trial, well,

20   we don't know that until we see it.  If, for example, someone

21   has been convicted of perjury, it certainly can be used at

22   trial.  I doubt your client's family has anything like that

23   but we don't know because you're not producing them.  So

24   certainly valid to produce them under the same level of

25   protection, but I don't want to do a separate confidentiality

LEEANN N. MUSOLF, RPR, Official Court Reporter

Proceedings

1  order.

2          The protective order I'm going to enter that will

3  handle all of these disputes in the manner in which I've

4  described is without prejudice to any parties' objections to

5  that order as articulated in the pending motions.  So I'm not

6  asking you give up anything, I'm asking you to consent to an

7  order that puts into effect the rulings that I've come up with

8  today.  Your rights to not go along with it are fully

9  preserved.

10          MR. OLIVER:  Understood, Your Honor.

11          THE COURT:  This, again, is my order.  It's not your

12  order.  I'm interserted in hearing what you think.  I've heard

13  what you think, and, so, it's going to be my order.  It

14  doesn't have to be a stipulation as far as I'm concerned.

15          Okay.  Next, litigation funding.

16          MR. OLIVER:  Your Honor, in fact, we -- we provided

17  a response to that before the joint letter went in.  I think

18  it was just a mistake that an artifact in the joint letter

19  that the dispute was raised at all.

20          Am I right, Mr. Schemitsch?

21          MR. SCHEMITSCH:  That's correct.

22          THE COURT:  All right.

23          Before I get to the motion to dismiss, anything else

24  in discovery that you've raised that I haven't ruled on?  And

25  is not an open invitation to put in new things.  Anything

Proceedings

1   that's still open?

2          MR. SCHEMITSCH:  Just to clarify on Defendants'

3   Document Request 21, which is seeking the release for one

4   160.50 and 160.55, would that be covered by the protective

5   order, as well, Your Honor?

6          THE COURT:  Correct.  This is just for discovery.

7   It's going to be confidential.  Let's see what's out there.

8          MR. BURNS:  Your Honor, may I?

9          THE COURT:  Sure.

10         MR. BURNS:  On Friday -- well, maybe more accurately

11  a week ago on Tuesday, my client wound up getting a letter

12  from the New York City Conflict of Interest Board and it's a

13  complaint that Mr. -- Plaintiff, Mr. Sherwood, seems to have

14  initiated, although I'm not sure.  And on Friday, I entered --

15  put in a notice of appearance for that matter with -- and

16  discussed with the Enforcement Chief the nature of the -- of

17  the complaint.  They have made a finding of probable cause,

18  which I am disputing with them separately because I don't

19  think they're within their jurisdiction to involve themselves

20  in this matter for a lot of other reasons.

21         I've found out from those conversations that there

22  was a Department of Investigation investigation conducted in

23  coordination with COIB.  So this is brand new information.

24  Again, I'm in a position where our firm also represents

25  Detective Sturman in the disciplinary matter that is identical

14

Proceedings

1    to the COIB and somewhat tangential to this matter, and it's

2    the NYPD disciplinary matter that is going forward and that's

3    scheduled for the end of the month.

4            So the -- what I need is the COIB, that information,

5    I don't know if the City can get information from them.  They

6    usually do operate in a highly confidential matter, and also

7    the Department of Investigation report that was done there

8    last.  So this is just fresh, ripe from Friday.

9            THE COURT:  Mr. Oliver, what do you have on this new

10   thing?  Anything?  Is it instigated by your clients?

11           MR. OLIVER:  Your Honor, we just learned about this

12   at noon today when we talked to Mr. Burns.  We then

13   investigated with our client.  He has a -- had a dim memory of

14   maybe making some -- some complaint to the Conflict of

15   Interest Board.  He searched through his emails to try to find

16   any records that might relate to that and he found nothing

17   that responded.

18           So it sort of rung a bell, but there's certainly no

19   documents or anything -- you know, it's certainly not

20   something he remembers specifically doing and he didn't -- was

21   not able to find any documents that reflected it.

22           I mean, certainly, we ask for all documents related

23   to all investigations from the City.  We didn't specifically

24   say COIB because we weren't thinking COIB.  We did say DOI.

25   So I'm knocking on wood that those records would pop in

Proceedings

1   response to the documents that the City will be producing.

2                THE COURT:  Okay.

3                Mr. Burns, you will get his deposition and check his

4   recollection, but if there's no documents on it that the

5   plaintiff has, you can't get blood out of a stone.  I'm not

6   going to make the plaintiff go to the City or go to whoever

7   the agency is and acquire all of these documents in order to

8   give them to you.  You --

9                MR. OLIVER:  Well, we get the City to do that.

10               THE COURT:  Look, I'm not going to make the

11  plaintiff do that.

12               MR. BURNS:  Okay.

13               THE COURT:  Okay?

14               MR. BURNS:  And just as a matter of scheduling,

15  Your Honor, personally, I have an elderly parent.  She's very

16  ill at the moment and I would just ask if the Court can give

17  us a little bit more time than two weeks.  To be in the middle

18  of taking depositions -- we entered the case a little bit

19  later than the other parties and, therefore, I would just ask

20  if we could get some more time.

21               Also in consideration of the fact that, from my

22  information, the end of June, I think it might be the 28th

23  although I'm not sure, Detective Sturman is going forward with

24  the disciplinary hearing which is identical to the -- to the

25  complaint here and it's directly related to the complaint.

*LEEANN N. MUSOLF, RPR, Official Court Reporter*

Proceedings

1          I'm not asking for a stay because there really is

2    not a basis that for that, but it might work better for the

3    parties if there's a little bit of flexibility in gathering

4    that information.

5          THE COURT:  What are you asking for, specifically?

6          MR. BURNS:  I would ask if the Court could give me

7    until the middle of July until we complete discovery.  I -- on

8    my personal end, I know that the next two weeks might be very

9    difficult for me to be involved in the proceedings.

10         THE COURT:  July 5th.  And I'll tell you something

11   else, Mr. Burns:  If you're unable to attend any depositions

12   within the next couple or few weeks because of your personal

13   situation, you'll get the transcript.  If you think you have

14   more questions, I'll bring them back.  You're holding up the

15   case any more for people being -- people having understandable

16   but a lot of lawyers in this case and we have to get it going.

17         MR. BURNS:  Thank you, Your Honor.

18         THE COURT:  Okay.

19         All right.  Now, on the motion to --

20         MR. OLIVER:  I'm so sorry, Your Honor, just -- just

21   in terms of the -- I just want to make sure that I understand

22   the Court's order about the depositions that are to take place

23   and the document production that is -- that is supposed to

24   happen because I know that Mr. Burns has reasons, but we still

25   haven't gotten any documents from Detective Sturman.  And, so,

*LEEANN N. MUSOLF, RPR, Official Court Reporter*

Proceedings

1    I know that's going to happen soon.  I think Mr. Burns

2    estimated that he'd be able to get it done in the next few

3    days absent some, you know -- a development, you know, that

4    might prevent it, but just trying to understand exactly what

5    the Court's direction is as to depositions --

6              THE COURT:  What I'm trying to do is incentivize

7    both Mr. Burns and Mr. Schemitsch to produce the documents as

8    soon as possible so that they aren't exposed to attorneys'

9    fees to reconvene depositions based on the new documents.

10             Now, that applies a little bit more to the City than

11   it does to Mr. Burns because if Mr. Burns' mother is in bad

12   shape, he may not be able to do it.  But, Mr. Burns, if you

13   can get those documents within the next few days, please

14   produce them.

15             MR. BURNS:  Yes, Your Honor, although I don't

16   believe there are, but we'll diligently work towards making

17   that happen.

18             THE COURT:  I will say, Mr. Oliver, there's a pretty

19   good chance there aren't any documents.

20             MR. OLIVER:  Understood.

21             THE COURT:  Okay.

22             Now, with regard to the motion to dismiss, I'm going

23   to grant it in part and deny it in part.  I'm mostly going to

24   deny it.  I'm obviously granting that part as to those state

25   law claims where no notice of claim was filed.  Plaintiff

Proceedings

1    hasn't opposed that.

2              The reason I'm denying the substantive First

3    Amendment claim is the following:

4              First of all, I don't have any question about the

5    plaintiff engaging in protected conduct.  In fact, I think

6    this is as protected -- this is petitioning the Government,

7    okay?  So I don't think there's any question about protected

8    conduct.  I'm not even sure the defendants think there's much

9    question about that.

10             Retaliatory motive is something that I'm not going

11   to decide in the context of a motion to dismiss -- I'm sorry,

12   in the context of this motion.  It seems to me motive is

13   always difficult for resolution on a pretrial motion and it's

14   particularly difficult here.  There are certainly actions of

15   the defendants which I don't think are denied, but assuming

16   them to be true for purposes of this motion, at least suggest

17   that there's a mixed motive in some of the responses and part

18   of it was retaliatory and, you know, I just can't see -- if I

19   were going to grant judgment as a matter of law, I'd probably

20   grant it that it was retaliatory, but I'm not doing that.

21   There's factual issues and I'm not going to do that.

22             Then there's the question of, well, the plaintiff

23   didn't stop his conduct and so he wasn't chilled.  And I think

24   the defendants are right that there's a fair amount of case

25   law that suggests that if the plaintiff keeps doing what he's

Proceedings

1    doing, then he's not chilled.  The problem I have with those

2    cases, as applied to this case, is that that proxy, a

3    plaintiff not being chilled, is usually a pretty good

4    indication of whether an objective person would be chilled.

5    This plaintiff is not an objective person.  I mean, it's clear

6    that most people would have been, based on his allegations,

7    would have been intimidated out of doing this, and he's not.

8    Now, the fact that he's got a thick skin doesn't mean the

9    average person wouldn't be intimidated.  And I think that's

10   important in this case where the difference between the

11   objective and the subjective is so extreme.

12          Looking at this conduct, again, from the way

13   plaintiff describes it, any reasonable person would be

14   deterred and chilled and the fact that plaintiff wasn't,

15   doesn't mean much to me, at least it doesn't mean much to me

16   as a matter of law.

17          Okay.  The bigger issue for me, and I think this is

18   a closed question, is the emotional harm.  Let me hear from

19   plaintiffs' attorneys.

20          If the plaintiff took the stand and was asked the

21   question, what harm did you suffer as a result of this course

22   of conduct, what would he say?

23          MR. OLIVER:  I mean, I think he would say that he

24   was frightened and intimidated by the individual interactions

25   with officers.  I think he would say that it caused him a

*LEEANN N. MUSOLF, RPR, Official Court Reporter*

Proceedings

1  tremendous amount of anxiety and, you know, I mean -- I think

2  even also say it gave him -- not -- although he pushed through

3  with his thick skin, it gave him pause and made it more

4  difficult for him to continue to engage in the same kind of

5  reporting and following-up on complaints that he had engaged

6  in before this series of incidents.

7          THE COURT:  And if he was asked on

8  cross-examination, which one or ones of the actions made him

9  feel particularly intimidated or vulnerable, which ones would

10  he settle on for that?

11          MR. OLIVER:  I'm not sure I know the answer to that

12  and I'm not -- I don't think I want -- he's here, but I don't

13  think I would like to put him on the stand, if it's okay with

14  Your Honor.

15          THE COURT:  Yeah.

16          MR. OLIVER:  I mean, I have a feeling -- I have a

17  feeling that it would be -- it might be insistence, you know,

18  those texts, you know, from those texts through TextNow, you

19  know, but I don't know the answer to that.

20          THE COURT:  Okay.  Certainly, I don't want to hear

21  from him now.  I'm just talking hypothetically about can there

22  be, under any view of this motion that will relate to the

23  plaintiff, could there be damages that the jury will find from

24  emotional distress and fear.

25          And while, like I said, I think the question is

LEEANN N. MUSOLF, RPR, Official Court Reporter

Proceedings

1   close, I think the jury ought to determine that issue, not me.

2   I haven't heard him.  I don't want to hear him today, and I

3   don't know how he's going to come across.

4           The jury, as often happens in so-called emotional

5   injury cases, might be a little more realistic than lawyers

6   sometimes and say this guy is just making up damages, he

7   wasn't intimidated at all.  But I'm not going to rule on that

8   as a matter of law.  So I'm going to let that issue go to the

9   jury, as well.

10          Next, I think the allegations against Officer Reis

11  are adequate.  I think it's clear that he's part of a pattern

12  of conduct here and the pattern is not that hard to discern,

13  you know.  Again, construing the facts most favorably to

14  Plaintiff, not finding any facts, I'm just saying based on the

15  plaintiff's allegations, it seems to me that he fit right in

16  there and, in deed, I'd have to assume it's true that he

17  called the plaintiff 15 times after the 311 complaints, that

18  he refused to give his name and then hung up, and that was

19  really the starting point for what was to follow.

20          That's my legal ruling.  Again, I want to emphasize

21  that there's always a chance the jury may say that this

22  plaintiff was a little bit off the wall from the way he

23  pursued this so zealously, but that's for the jury to say, not

24  for me to say.  I'm going to put that issue to the jury.

25          Now, what I think is a very easy claim for me is the

Proceedings

1    Monell Claim.  I think this is a Monell Claim.  You know,

2    you've got a crusader out there who's trying to get people to

3    park legally, and it's a widespread practice of not parking

4    legally, and according to the complaint, trying to intimidate

5    him for his crusade, which is a legal crusade.  The law

6    doesn't allow the NYPD or anyone else do this.

7          And I have to mention this on the side, of course

8    those of us who have lived in New York, we understand that

9    there is some, from time to time and place to place without

10   quantifying it, there is some disregard for the requirements

11   of following the law in this kind of instance.  I mean, when I

12   walk to court everyday, and it doesn't involve this case, but

13   I see all these vehicles with construction worker vests in the

14   windshield and I know what's going on and nobody else is

15   allowed to park there.

16         So, yeah, I know that's not this case, but the

17   pattern of these things happening to the plaintiff is clearly

18   enough to me to suggest a Monell Claim because it's a practice

19   that the City really could have known about, I'm not saying

20   they did or didn't but it's not implausible that they did know

21   about it.  And the fact that they, you know, do -- from time

22   to time, they come down on officers for doing this kind of

23   thing, it kind of reminds me of the scene with seeing with

24   Claude Rains in Casa Blanca when he's confronted and he says,

25   "gambling, gambling, I'm shocked, shocked.  Who knew there was

Proceedings

1  gambling going around there."  Because as soon as the City

2  does anything about this, the practice resumes with impunity.

3       Again, I'm not finding those facts, I'm simply

4  saying that's the argument that plaintiff is going to make and

5  I think the allegations are sufficient to support it, so I'm

6  denying that, as well.

7       And like I said, the state law claims are done.

8       MR. OLIVER:  I'm so sorry, Your Honor.  I'm just

9  seeking clarity on what the Court is saying about the state

10  law claims.  The notices of claim were filed and accepted on

11  the state law claims.

12       THE COURT:  That's not my understanding.  They were?

13       MR. OLIVER:  Yes, Your Honor, that's right.  They

14  were filed -- we filed actions seeking to have the notices of

15  claim deemed timely filed in State court.  We prevailed on

16  both of those actions and there -- there is proof to that

17  effect in the record.  I'm sorry I can't tell you exactly

18  where in the motion to dismiss briefing it is, but the State

19  courts did rule that the notices of claim that we filed out of

20  time were timely filed *nunc pro tunc* and, so, the -- that's

21  the status of the state law claims and the notice of claim.

22       THE COURT:  I did not understand that.

23       Do the defendants have any different understanding?

24       MR. SCHEMITSCH:  Just to clarify, that's

25  specifically only with two dates of incident.  That's with, I

24

Proceedings

1   believe, the September 10, 2021 date of incident and the

2   October 18, 2021 date of incident.

3          MR. OLIVER:  I'm so sorry, that's correct.  That's

4   right, Your Honor.  As to those two incidents, there are

5   notices of claim.  As to the other two incidents, there were

6   not notices of claim.

7          THE COURT:  Okay.  So the allowed incidents are this

8   action, and the disallowed incidents are not part of this

9   action, although I don't think that the fact that the state

10  claims have been partially dismissed in any way limits the

11  plaintiff in putting in evidence of those two claims in

12  support of his Monell Claim or the motivation of the officers

13  or any other relevant issue in the case.  He can't just

14  recover money from them.

15         Okay.  Anything I've left out in the motion?  Okay.

16  Anything else we need to talk about?

17         MR. OLIVER:  I just have one question, I think,

18  Your Honor.  We had 30(b)(6) deposition notices out there, as

19  the Court's ordered, to conduct the parties' -- the

20  defendants' depositions extend to the 30(b)(6) notice or are

21  we just supposed to work everything out and get it all done by

22  July 5th?

23         THE COURT:  If you give me a question like that, I'm

24  going to give you the answer you expect.  The latter.  The

25  latter; get it done by July 5th.

LEEANN N. MUSOLF, RPR, Official Court Reporter

Proceedings

1          MR. OLIVER:  Okay.  Thank you, Your Honor.

2          THE COURT:  All right.

3          Thank you all for calling in.  Please try to work

4   your disputes out before you bring them to me.  I'll wait for

5   the protective order that you're going to do that puts all of

6   my rulings into it, but I really think it should be submitted

7   in short order by the end of the week, okay?

8          We are adjourned.  Thank you.