UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

JUSTIN SHERWOOD,

                 Plaintiff,

     - against -

THE CITY OF NEW YORK, *et al.,*

               Defendants.

--------------------------------------------------------------------X

**MEMORANDUM OF
LAW IN SUPPORT OF
PLAINTIFF'S MOTION
TO REMOVE
CONFIDENTIALITY
DESIGNATIONS AND
FOR RELATED
RELIEF**

22-cv-7505 (BMC)

Gideon Orion Oliver
277 Broadway, Suite 1501
New York, NY  10007
Gideon@GideonLaw.com
(718) 783-3682

J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre St., Suite 216
Ridgewood, New York 11385
Remy@FemmeLaw.com
(929) 888-9480

Co-Counsel for Plaintiff Justin Sherwood

**<u>TABLE OF CONTENTS</u>**

TABLE OF CONTENTS ................................................................................................. i

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF UNDERLYING FACTS ................................................................ 2

I.    Brief Summary of Incidents and Disciplinary Outcomes. ..................................... 2

II.   NYPD's Parallel Harassment of Paul Vogel. ....................................................... 5

PROCEDURAL HISTORY ........................................................................................... 5

I.    The Applicable Confidentiality Order and the Related Briefing. ........................ 6

II.   Defendants' Production and Plaintiff's Request to De-Designate. ....................... 8

DOCUMENTS AT ISSUE ............................................................................................ 11

ARGUMENT ................................................................................................................. 13

I.    State FOIL Law Governs this Motion. ................................................................ 13

II.   Basic FOIL Principles Applicable to this Motion ............................................... 13

III.  Law Enforcement Disciplinary Records Are Presumptively Public (subject to limited
redactions when material within them is subject to narrow exemptions recognized under the
FOIL). 16

IV.   New York State and Federal Courts Have Ruled that Law Enforcement Disciplinary
Records Cannot Be Uniformly Withheld from Disclosure Based On Personal Privacy Grounds
Under FOIL 87(2)(B) ................................................................................................. 20

V.    New York Courts Have Ordered the NYPD And CCRB to Disclose the Same Types of
Records at Issue in this Application ........................................................................... 21

VI.     Because Defendants' Position is not Substantially Justified, the Court Should Award

Mandatory Attorneys' Fees............................................................................................ 23

CONCLUSION................................................................................................................. 26

APPENDIX:  Complete List of Documents at Issue ................................................... A1

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In Re Abdur-Rashid v N.Y.P.D.,*
   31 N.Y.3d 217 (2018) ..............................................................................17

*Beechwood Restorative Care Ctr. V. Signor,*
   5 NY3d 435 (2005) ................................................................................16

*Buffalo Police Benevolent Association, Inc. v. Brown,*
   69 Misc.3d 998 (Sup. Ct., Erie County 2020) .......................................20

*Capital Newspapers Div. of Hearst Corp. v. Burns,*
   67 N.Y.2d at 566 ....................................................................................16

*Capital Newspapers Div. of Hearst Corp. v Burns,*
   67 NY2d 562 (1986) ..............................................................................16

*Capital Newspapers Division of the Hearst Corp. v. City of Albany,*
   15 N.Y.3d 759 (2010) ............................................................................17

*Casaccia v. City of Rochester,*
   No. 17-CV-6323 (FPG)(MJP), Dkt. No. 85 (WDNY July 7, 2020).......22

*Church of Scientology of N.Y. v. State of New York,*
   46 N.Y.2d 906 (1979) ............................................................................16

*City of Newark v. Law Department of City of New York,*
   304 A.D.2d 28 (1st Dept. 2003)..............................................................17

*In Re Data Tree, LLC v Romaine,*
   9 N.Y.3d 454 (2007) ..........................................................................16, 17

*In Re Dilworth v. Westchester County Department of Correction,*
   93 A.D.3d 722 (2nd Dept. 2012) ...........................................................17

*In Re Fink v. Lefkowitz,*
   47 N.Y.2d 567 (1979) ............................................................................17

*In Re Gould v. N.Y.P.D.,*
   89 N.Y.2d 267 (1996) ........................................................................ *passim*

*Jackson v. Nassau Cnty.,*
   No. 18-CV-3007, 2022 U.S. Dist. LEXIS 83333 (E.D.N.Y. May 9, 2022) ..........................26

*Matter of Johnson v. New York City Police Dept.*,
257 AD2d 343 (1st Dept. 1999), *lv dismissed*, 97 NY2d 971 (1999)....................................25

*Legal Aid Society v. NYPD*,
No. 153748/2022, 2023 WL 3021949 (Sup. Ct. NY County Apr. 19, 2023)........................24

*Luongo v. Records Access Officer, Civilian Complaint Review Board*,
150 AD3d 13 (1st Dept. 2017)................................................................................................18

*McDevitt v. Suffolk County*,
78 Misc.3d 1239[A], 2023 NY Slip Op 50486[I] (Sup. Ct., Suffolk County
2023) ......................................................................................................................................23

*Mingo v. City of New York*,
No. 19-CV-5806 (FB)(VMS), 2020 U.S. Dist. LEXIS 229918, 2020 WL
7085359 (EDNY Dec. 3, 2020) .............................................................................................22

*Mountain View Coach Lines, Inc. v. Storms*,
102 AD2d 663 (2nd Dept. 1983) ...........................................................................................23

*In Re N.Y. Civ. Liberties Union*,
32 N.Y.3d at 576 ....................................................................................................................17

*Newsday, Inc. v. Sise*,
71 NY2d 146 (1987) ..............................................................................................................15

*NYCLU v. NYC Dept. of Corr.*,
213 AD3d 530 (1st Dept. 2023)........................................................................................19, 23

*NYCLU v. Syracuse*,
210 AD3d 1401 (4th Dept. 2022) ......................................................................................19, 23

*NYP Holdings, Inc. v. New York City Police Department*,
77 Misc.3d 1211[A], 2022 NY Sip Op 51191[U], *4 (Sup. Ct., NY County
2022) ......................................................................................................................................23

*NYP Holdings v. NYPD*,
77 Misc. 3d 1211(A), 178 N.Y.S.3d 427 (Sup. Ct. NY County 2022)...................................24

*PBA of the NY State Troopers v. Hochul*,
Index No. 907274-21 ..............................................................................................................23

*Rickner PLLC v. City of New York*,
2022 NY Misc. LEXIS 2233 (Sup. Ct. NY Co. May 25, 2022)............................................24

*Riley v. County of Broome*,
95 NY2d 455 (2000) ..............................................................................................................18

iv

*Russo v. Nassau County Community Col.*,
  81 NY2d 690 (1993) ...................................................................................23

*In Re Schenectady County Society for Prevention of Cruelty to Animals, Inc. v. Mills*,
  18 N.Y.3d 42 (2011) ..................................................................................17

*Schenectady Police Benevolent Ass'n v. City of Schenectady*,
  2020 NY Slip Op 34346(U), at *5 (N.Y. Cty. Sup. Ct. 2020) ................................23

*Schenectady Police Benevolent Assn v. City of Schenectady*,
  2020 NY Misc. LEXIS 10947, 2020 NY Slip Op 34346[U] (Sup. Ct.,
  Schenectady County Dec. 29, 2020) ........................................................20, 22

*T-Mobile Ne., LLC v. DeBellis*,
  32 NY3d 594 (2018) ..................................................................................18

*In Re Thomas v. City of NY Dept. of Hous. Preserv. & Dev.*,
  12 Misc 3d 547 (Sup Ct, N.Y. County 2006) ....................................................23

*Underdog Trucking, LLC v. Verizon Servs. Corp.*,
  273 F.R.D. 372 (S.D.N.Y. 2011) ..................................................................25

*Uniformed Fire Officers Association v. de Blasio*,
  20 Civ. 05441 (KPF) ..............................................................................20, 21

*Walls v. City of New York*,
  402 F.Supp.3d 686 (EDNY 2020) ..........................................................21, 24, 27

*Wash. Post Co. v. N.Y. State Ins. Dep't*,
  61 N.Y.2d 557, 567 (1984) .........................................................................17

*Xerox Corp. v. Town of Webster*,
  65 N.Y.2d 131 (1985) ...............................................................................23

*Zhang v. City of New York*,
  2020 WL 1258938 (NY County Sup. Ct. Nov. 5, 2020), *aff'd* 198 AD3d 504
  (1st Dept. 2021) ......................................................................................19

**Statutes**

FOIL § 86(6) .............................................................................................19

FOIL § 87(2)(b) .........................................................................16, 20, 22, 23

FOIL §§ 87(4-a) .........................................................................................19

New York Civil Rights Law § 50-a ................................................................ *passim*

New York Public Officers Law, Article 6, §§ 84-90 ("FOIL")............................................. *passim*

**Other Authorities**

2020 NY Session Laws 780-81..........................................................................................18

Fed. R. Civ. P. 37(a)(5)(A)(ii) .........................................................................................25

Jesse Coburn. "IGNORED, DISMISSED: How the NYPD Neglects 311
   Complaints about Driver Misconduct," *StreetsblogNYC*, October 21, 2021
   (the "10/21/21 Article"). Available online at
   https://nyc.streetsblog.org/2021/10/21/ignored-dismissed-how-the-nypd-
   neglects-311-complaints-about-driver-misconduct/ ...............................................6

## PRELIMINARY STATEMENT

Plaintiff Justin Sherwood submits this Memorandum of Law, along with the October 16, 2023 Declaration of Gideon Orion Oliver ("Oliver Decl.") and attachments, in support of his motion to remove the blanket confidentiality designations that Defendants have applied to their production of certain records related to New York City Department of Investigation ("DOI"), New York City Police Department Internal Affairs Bureau ("IAB"), and New York City Civilian Complaint Review Board ("CCRB") records arising from complaints, investigations, and discipline imposed arising from the retaliation he experienced that is the subject of this lawsuit, and for related relief. He has no objection to limited, appropriate redactions as permitted under New York's Freedom of Information Law (the "FOIL"), New York Public Officers Law, Article 6, §§ 84-90. In essence, notwithstanding the Court's direction that documents that are "potentially available to the public under FOIL" should not be designated confidential, Defendants have designated virtually[1] every single record related to the law enforcement disciplinary proceedings at issue as confidential, notwithstanding the fact that those records are presumptively public under the FOIL. Indeed, they were candid this is what they were doing, writing, "defendants note that the records you seek to de-designate from confidential are records of investigations under the purview of paragraph 2(a) of the Confidentiality Order," without any explanation as to why those records, or any portions of them, are or should not be presumptively public under the FOIL.

This motion follows in large part because shining light on the nature and extent of the investigations and disciplinary proceedings that resulted from his own harassment at the hands of

---

[1] As described further below, on October 11, 2023, after many rounds of following up, Defendants agreed to remove designations from a document it turns out was on a City website and recordings of phone calls Mr. Sherwood was on (and therefore could have recorded on his own). Their position is that *all* of the remaining documents at issue should be treated as Confidential, *in their entirety*.

1

the NYPD has always been one of Mr. Sherwood's goals in this litigation. Those goals were important considerations in negotiating the settlement in this case. Mr. Sherwood seeks to shed light on what Defendant City did – and did not – do in terms of investigations and discipline. Among other things, he wants to be able to reveal how and why the CCRB and IAB came to certain conclusions about which Defendants engaged in which acts, and why Defendant City has, to date, imposed only one days' lost vacation, and some recommended re-training, in terms of penalties against any of the Defendants.

Beyond that, as seen below, the documents in question are presumptively public under the FOIL, a fact Defendants have neither acknowledged nor grappled with in designating the documents as "Confidential" *en masse* and in refusing to de-designate virtually all of them, without providing any justification, let alone the sort of factual, evidentiary showing that would be necessary to support withholding or redacting them under the FOIL.

## STATEMENT OF UNDERLYING FACTS

This is a case about retaliation by NYPD members against Mr. Sherwood for reporting illegally parked vehicles, including those apparently owned by or associated with NYPD members. Such illegal parking was and is — as the Court described it — "a widespread practice of [the NYPD] not parking legally" a "practice" the City allows to continue "with impunity" – in fact,  Oliver Decl. Ex. 1 ("Tr.') at 22:1-23:2. Plaintiff is (again, as the Court put it) "a crusader out there who's trying to get people to park legally," and while it is "a legal crusade," in the incidents that are the subject of the lawsuit, members of the NYPD set out on their own crusade: "trying to intimidate [Mr. Sherwood] for his[.]"  *Id.* Lest there be confusion, the Court pointed out, "[t]he law doesn't allow the NYPD or anyone else do this." *Id.*

## I.     Brief Summary of Incidents and Disciplinary Outcomes.

To briefly recap, among other things, here are the key incidents (among others) in how

members of the NYPD "tr[ied] to intimidate" (*id.*) Mr. Sherwood.

On **August 13, 2021, Defendant Tiagom Reis** responded to 311 complaints Mr. Sherwood made that day about illegally parked vehicles in the vicinity of the NYPD's 84th Precinct and/or Transit District ("TD") 30 by calling him, refusing to give his name, and hanging up. FAC ¶ 48. Ultimately, the CCRB substantiated Abuse of Authority and Discourtesy allegations related to the incident, recommending Command Discipline B, the authorized penalties for which range from a reprimand to the loss of up to 10 days' vacation. FAC ¶¶ 49-51. In March of 2023, the NYPD docked Defendant Reis 1 vacation day. Oliver Decl. ¶ 3.

On **August 26, 2021, Defendant Detective Samantha Sturman** responded to 311 complaints Mr. Sherwood made that day about illegally parked vehicles in the vicinity of the NYPD's 84th Precinct and/or TD 30 by calling and arguing with him, ending the call by yelling, "Stop calling, dickhead!" FAC ¶¶ 52-53. Ultimately, the City's CCRB substantiated allegations of Offensive Language and Discourtesy against Defendant Detective Sturman related to the incident, recommending Command Discipline A, with penalties ranging from reprimand to the loss of up to 5 vacation days,. FAC ¶¶ 54-56; *see also* Oliver Decl. Ex. 13 (redacted CCRB Closing Report). The NYPD ultimately closed the case on March 6, 2023 with a recommendation that she receive additional training. *See* Oliver Decl. ¶ 5.

On **September 10, 2021, Defendant NYPD Officer John Madera** responded to 311 complaints Mr. Sherwood made that day about illegally parked vehicles in the vicinity of the NYPD's 84th Precinct and/or TD 30 by calling Mr. Sherwood from a blocked number, falsely identifying himself as "Josh Hader" – a City 311 operator – and falsely stating that, because Mr. Sherwood was submitting multiple complaints, he might be barred from submitting 311 complaints in the future. FAC ¶¶ 57-66. The City's CCRB's eventually substantiated allegations

3

of Discourtesy, Abuse of Authority, and Making False Statements related to the incident, recommending discipline including Command Discipline A, Command Discipline A, and Charges, with penalties ranging from reprimand to the loss of employment as a NYPD member. FAC ¶¶ 75-78. Upon information and belief, the matter has been referred to the NYPD's Administrative Prosecution Unit ("APU"), where a potential prosecution is still pending. *See* Oliver Decl. ¶ 5.

On **October 18, 2021, Defendants Samantha Sturman and Arthur Sturman responded** to 311 complaints Mr. Sherwood made that day about illegally parked vehicles in the vicinity of the NYPD's 84th Precinct and/or TD 30 by texting Mr. Sherwood from a secret, non-NYPD phone number created through an anonymous messaging service called TextNow, the threat: "Keep fucking around", as well as by repeatedly calling him from a blocked number. FAC ¶¶ 88-96. In November of 2022, the CCRB substantiated allegations of Abuse of Authority and Discourtesy against both Sturman Defendants related to the incident, recommending discipline against both. FAC ¶¶ 99-100, 106-108, 121-122. Upon information and belief, the matter against Defendant Detective Sturman has been referred to the NYPD's APU since December 16, 2022, where a potential prosecution is still pending. *See* Oliver Decl. ¶ 6.

Ultimately, however, the NYPD Commissioner overturned the CCRB's recommendation to discipline Defendant Arthur Sturman entirely, based on purported daylight between the evidence the IAB gathered and evidence the CCRB gathered, which apparently led the NYPD and the IAB to come to some different conclusions about what Arthur Sturman did or did not do. Oliver Decl. Ex. 3. Among other things, the Commissioner claimed that "[t]he CCRB's substantiated finding was largely based on evidence that the user who created the "Text Me Now" application had an email address that was similar to the one utilized by Police Officer

4

Arthur Sturman" and that a man answered the number associated with the account when called.

Oliver Decl. Ex. 3 at 2.



## II.  NYPD's Parallel Harassment of Paul Vogel.

As explored in the complaint, in parallel to the harassment Mr. Sherwood endured, Paul

Vogel faced a similar storm of harassing phone calls after filing 311 complaints about illegal

parking. *See, e.g.,* FAC ¶ 127.[4] In fact, he

## **PROCEDURAL HISTORY**

---

[2]

[3] The Commissioner's analysis also posits because Defendant Arthur Sturman claims he was "not at home," somehow it is less likely he sent a text message. This leap is not explained.

[4] *See also* Jesse Coburn. "IGNORED, DISMISSED: How the NYPD Neglects 311 Complaints about Driver Misconduct," *StreetsblogNYC*, October 21, 2021 (the "10/21/21 Article"). Available online at https://nyc.streetsblog.org/2021/10/21/ignored-dismissed-how-the-nypd-neglects-311-complaints-about-driver-misconduct/ (last accessed October 16, 2023).

[5] As noted in the appendix, Defendants have designated █████████████████████ as confidential.

I.      **The Applicable Confidentiality Order and the Related Briefing.**

Mr. Sherwood brings this application under Paragraph 8 of the Order at ECF 60-1, which provides that a receiving party objecting to a confidentiality designation can object in writing to the producing party, after which the producing party must attempt to resolve the conflict in good faith. If resolution cannot be reached within 45 days of the written objection, the receiving party must make a motion to remove the designation. The core of what is at issue in this application under that provision are documents related to the various complaints, investigations, and disciplinary decisions related to Defendants' conduct toward Mr. Sherwood. The dispute, essentially, is about what is covered in Paragraph 2 of that proposed order, as modified by the Court's Order at ECF 61. Together, the relevant text has three clauses that apply (all emphasis added):

> "'Confidential Materials' shall mean any (a) New York City Police Department ("NYPD") personnel and disciplinary-related records and information, and records of investigations regarding the conduct of Members of the Service of the NYPD conducted by the NYPD, the Civilian Complaint Review Board, or other agencies, *which are not otherwise publicly available*" (ECF 60-1 ¶ 2);

> "documents and information *shall not be designated* 'Confidential Materials' to the extent that they are otherwise publicly available" (*id.*); and

> "For purposes of the protective order, otherwise publicly available shall include documents currently available to the public and *those potentially available to the public under FOIL*" (June 5, 2023 Minute Order).[6]

At the heart of this application is a "which came first – the chicken or the egg?"-type problem: If the records are "potentially available" (that is, not just literally already disclosed) under FOIL, Defendants were instructed that those records "shall not be designated"; if the documents were unavailable under FOIL, Defendants could, in good faith, designate them. Notably, the Order came about after multiple rounds of briefing and oral argument — largely on

---

[6] Together, for convenience, these three provisions are called the "Order" throughout this memorandum.

exactly the issue being litigated in this motion. First, the parties submitted a May 26, 2023 joint

letter addressing this issue. *See* ECF 59-1. In that letter, "Defendants essentially [sought] to have

the Court — notwithstanding the legislature's contrary policy choice — pre-rule that all

disciplinary records are confidential." *Id.* at 1. Or, as Defendants themselves put it, all "law

enforcement officers' disciplinary records should be deemed confidential to protect their privacy

interests as well as to prevent other harms from occurring," regardless of whether they were

publicly available under FOIL. *Id.* at 4.

The Court addressed these issues at the May 30, 2023 conference, including the

following exchange with Defendants' counsel:

> THE COURT:  As I understand it, the sticking point from the defendant[s'] perspective
> on that is that you don't want disciplinary or grievance information about these officers
> publicly disclosed or available to anyone; is that it?
>
> MR. SCHEMITSCH: That's it, Your Honor.
>
> THE COURT: Okay. Isn't there already a law that they could get it through [—] that
> would make it publicly available?
>
> MR. SCHEMITSCH: A number of courts have found under [the repeal] of section 50(a),
> which is I believe the law you're referring to, does not necessarily govern in terms of
> confidentiality orders. The Southern District --
>
> THE COURT: Well, yeah, I'm not bound by it; I agree with that. The law has no impact
> on discovery in a federal action. But my point is, what are you really giving up if they can
> get the documents and use them publicly anyway?
>
> MR. SCHEMITSCH: Your Honor, not everything is publicly accessible, as a primer, but
> we do believe, essentially, the confidentiality order should be put in place given that
> there's a lot of information in these documents as to nonparties, as to investigations, and -
> - as well as complaints issued by third parties.
>
> THE COURT: But all of that would come out under the new statute, right?
>
> MR. SCHEMITSCH: Not everything, Your Honor, but I –
>
> THE COURT: Okay. Here's the deal: You may – we will enter a protective order that
> allows you to designate those things ***that are not publicly available under the new***

*statute*. God help us all if we have a fight about that.

Tr. at 4:21-5:25 (emphasis added) (also noting, at the conclusion and after asking Plaintiff's counsel why the records matter, "I will say that if the City wants to withhold particular information that it thinks is not available publicly, then you've got to do the equivalent of a privilege log and tell us what the information is. You want to go through all that work, more power to you. All right. So that's my ruling on the confidentiality order."). That is, after pressing Defendants on what justification there might be to withhold documents available under FOIL, the Court directly said Defendants were only allowed to designate things that were "not publicly available under the new statute." *Id.*

However, even after that appearance, the parties were unable to reach an agreement on the exact language. *See* Dkt. No. 60. In that application, Plaintiff noted that the objection he had was to the meaning of "otherwise publicly available" in the proposed order, explaining: "if 'otherwise publicly available' means that a record is confidential unless it is literally, currently available to the public, the order is inconsistent with [FOIL], as discussed at the conference. If it simply means potentially available under FOIL, that is not inconsistent." Perhaps picking up on this, the Court cut to chase and endorsed the proposed order including the language to which Plaintiff had objected, but modified it by explaining, "For purposes of the protective order, otherwise publicly available shall include documents currently available to the public and those potentially available to the public under FOIL." ECF 61.

## II.  Defendants' Production and Plaintiff's Request to De-Designate.

As noted at the conference, at that time Defendants had not made a fulsome document production, including with respect to the relevant investigations and disciplinary proceedings — in part because of the outstanding confidentiality dispute. *See, e.g.,* Tr. at 3:23-25 ("THE COURT:  I am not understanding why the defendants have produced 100 pages of documents at

8

this stage of the case."). In order to speed things along following the conference (after several follow up emails and a call) — and to receive documents as quickly as possible and avoid more delay — Plaintiff agreed that Defendants could produce those documents with a blanket confidentiality designation, with the understanding that Plaintiff would ask Defendants to withdraw certain relevant designations pursuant to the Order later. Thus, on June 7, 2023, Defendants had a thumb drive hand delivered with their production, designating the whole drive "confidential" under the Order.

Shortly thereafter, taking into consideration those documents, the parties reached a settlement in principle. However, part of that settlement was an agreement that the parties would work in good faith to address Plaintiff's concerns to remove the confidentiality designations from certain key documents from within the production, and that Plaintiff would make an application if a mutual agreement could not be reached. *See, e.g.,* ECF 62 (joint letter, explaining that further time was needed to finalize the settlement, because the parties were still conferring on "whether certain documents disclosed by Defendants in discovery warrant treatment as 'Confidential' under the protective order in the case, or [whether Plaintiff would be] making an application to the Court to rule on" the issue).

In keeping with the above, on August 16, 2023, Plaintiff served a list of documents[7] he was specifically asking Defendants to de-designate, and asked to meet and confer. As seen above, under Paragraph 8 of the Order, a party objecting to a designation is required both to confer and to make an application within 45 days.[8]  Thus, a motion was initially due on or before

---

[7] As noted below, that list — sans the small handful of documents Defendants agreed to de-designate October 11 — appears in Appendix 1.

[8] Plaintiff objected to this provision, citing the extended time the City typically takes to convey and negotiate confidentiality provisions. Counsel stated those concerns were not founded and tried to assure Plaintiff the City would take positions in advance of that 45 day deadline, with time to meet and confer left over.

October 2, 2023. Receiving no substantive response to the August 16, 2023 objection, Plaintiff

followed up and specifically referenced this issue on at least the following occasions in the 55

days between August 16, 2023 and October 10, 2023:

- By email on September 8, 2023;
- By emails on September 11, 2023;
- In a telephone call on September 11, 2023;
- By emails on September 14, 2023;
- In a telephone call on September 14, 2023;
- By email on September 21, 2023;
- In two emails on September 26, 2023;
- In a telephone conversation on September 27, 2023 (along with, at Defendants' request, another forwarded copy of the thread created by the emails above); and
- By emails on October 10, 2023.

It was only after the October 10 email that Plaintiff received any response. Amid this, on

September 27 (the day before the deadline to file a settlement), having received no substantive

response about his objections, Plaintiff made a consent application to extend the time to move

the time to move for de-designation. *See* ECF 63. The Court granted that extension and set a

briefing schedule. September 28, 2023 Minute Order. Even then, however Defendants did not

have a substantive position ready before October 2.

      Defendants' only effort to discuss what should be confidential came on October 11, after

Plaintiff sent an October 10 message stating: "If the City is going to agree to de-designate

anything, we really, really need to know **by close of business tomorrow**" and that "[a]s it

stands, if we do not hear from you, we will understand that the City maintains that each

designation for each document is proper, and further, that we are at an impasse" (emphasis in

original). In that October 11 response, Defendants only agreed to de-designate 5 documents and

a sixth document that was severable from within another. Those consisted of:

    (1) a publicly available 311 privacy policy;
    (2) Three audio recordings of calls that Plaintiff was a party to (and could have legally

recorded himself);[9]
(3) one Defendant's "memobook" (a kind of document that is routinely produced in litigation without designation, and often publicly filed by the City itself); and
(4) a short document reflecting the DOI investigation referral that resulted in the CCRB opening one of the relevant investigations, simply summarizing the basic, public facts.

In other words, those documents were really not colorable as confidential — and did not reflect any attempt by Defendants to deal with what is "potentially available" under FOIL.

Accompanying this, Defendants stated: "defendants note that the records you seek to de-designate from confidential are records of investigations under the purview of paragraph 2(a) of the Confidentiality Order" and "they should remain designated Condidential." Defendants did not explain any further. That is, they provided no explanation for how — as the Court explained —the documents were not confidential when Plaintiff "can get the documents and use them publicly anyway" under FOIL (or, in the alternative, any theory at all as to why the documents were *not* potentially publicly available under FOIL). Nor did Defendants provide the privilege log the Court said they would need to, in order to justify withholding and/or redacting the documents. As further explored below, given that the documents at issue are, essentially the discipline and investigation documents that are ***presumptively*** available under the FOIL, it is hard to see a defensible position that ***almost literally nothing*** in entire investigative files would by "potentially available" under FOIL. Yet, in this email, that appeared to genuinely be the position Defendants staked out, and Plaintiff has heard nothing from them since.

## DOCUMENTS AT ISSUE

Plaintiff has included an Appendix to this memorandum that lists all documents that remain at issue, provides brief descriptions of the documents, and sorts them into conceptual categories that relate to how they are "potentially available to the public under FOIL." ECF 61.

---

[9] ████████████████████████████████████████████████████████████████████████

That said, less exhaustively, the documents at issue in this motion can be sorted into the following general categories:



## ARGUMENT

### I.      State FOIL Law Governs this Motion.

As set out above, this is an application made under the Order, which provides, in mandatory terms, that parties "shall not" apply confidentiality to any record that is "otherwise publicly available." And — again using mandatory language — the Court was clear that the "shall not" covered by "['] otherwise publicly available['] shall include" not just "documents currently available to the public" but *also* those that are merely "potentially available to the public under FOIL." Order. As framed, then, this motion turns on what is "potentially available to the public under FOIL." *Id.* As further set out below, the documents listed in the Appendix, which Mr. Sherwood has asked Defendants, and now the Court, to de-designate, are all presumptively available under the FOIL. In light of that fact, and Defendant City's lack of response to Plaintiff's request to de-designate these documents for around 55 days, and failure to provide any reason, explanation, or justification for their blanket designations of all of the law enforcement disciplinary records it disclosed as "Confidential," the Court should remove the improper designations.

### II.      Basic FOIL Principles Applicable to this Motion.

New York's FOIL provides for reasonably prompt access to "[a]ll government records," which are "presumptively open for public inspection and copying," unless they fall within a specific, enumerated exemption to the law. *In Re Gould v. N.Y.P.D.*, 89 N.Y.2d 267, 275 (1996); *see also* FOIL §§ 84, 87(2), 89(3)(a). Because the law was enacted "in order to encourage public awareness . . . and to discourage official secrecy," the FOIL's disclosure requirements must be "'liberally construed and its exemptions narrowly interpreted so that the public is granted maximum access to the records of government.'" *Newsday, Inc. v. Sise*, 71 NY2d 146, 150 (1987), quoting *Matter of Capital Newspapers v. Whalen*, 69 NY2d 246, 252 (1987). "When

faced with a FOIL request, an agency must" ultimately "either disclose the record sought, deny the request and claim a specific exemption to disclosure, or certify that it does not possess the requested document and that it could not be located after a diligent search." *Beechwood Restorative Care Ctr. V. Signor*, 5 NY3d 435, 440-41 (2005); FOIL § 89(3)(a).

An agency may only withhold records or portions thereto if the withheld material falls within the scope of a specific statutory exemption under FOIL § 87(2). To ensure maximum access to government documents, the exemptions are to be narrowly construed. *Gould*, 89 N.Y.2d at 275; *see also Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d 562, 566 (1986). When an agency withholds records or redacts information based on a claimed exemption under FOIL § 87(2), it has the "burden of demonstrating that the requested material falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access." *Capital Newspapers Div. of Hearst Corp. v. Burns*, 67 N.Y.2d at 566; *Gould*, 89 N.Y.2d at 275 ("the burden rest[s] on the agency to demonstrate that the requested material indeed qualifies for exemption")*; see also* FOIL § 87(2) (requiring that "[a] denial of access shall not be based solely on the category or type of such record and shall be valid only when there is a particularized and specific justification for such denial"; FOIL § 89(4)(b) ("the agency involved shall have the burden of proving that such record falls within" a statutory exemption on appeal).

In order to meet its burden to justify withholding all or part of a record it claims is subject to a claimed statutory exemption, an agency must justify its reliance on each such exemption "in more than just a 'plausible fashion.'" *In Re Data Tree, LLC v Romaine*, 9 N.Y.3d 454, 462-463 (2007). That includes setting forth a "factual basis" establishing entitlement to claim each such exemption. *Church of Scientology of N.Y. v. State of New York*, 46 N.Y.2d 906, 908 (1979). "Only where the material requested falls squarely within the ambit of one of these statutory

14

exemptions may disclosure be withheld." *In Re Fink v. Lefkowitz*, 47 N.Y.2d 567, 571 (1979). If

the agency "fails to prove that a statutory exemption applies, FOIL compels disclosure, not

concealment." *Data Tree, LLC*, 9 N.Y.3d at 463.

Importantly, "blanket exemptions for particular types of documents are inimical to

FOIL's policy of open government," and fail to meet the burden necessary to withhold such

records. *Gould*, 89 N.Y.2d at 275; *see also In Re N.Y. Civ. Liberties Union*, 32 N.Y.3d at 576

(citing same); *City of Newark v. Law Department of City of New York*, 304 A.D.2d 28, 34 (1st

Dept. 2003) ("blanket invocation of . . . statutory exemptions, without enumerating or describing

any of the documents withheld and without offering a specific basis for any of the claims of

exemption[]" does not pass muster). "Conclusory assertions that certain records fall within a

statutory exemption are not sufficient; evidentiary support is needed." *In Re Dilworth v.

Westchester County Department of Correction*, 93 A.D.3d 722, 724 (2nd Dept. 2012); *see also

Capital Newspapers Division of the Hearst Corp. v. City of Albany,* 15 N.Y.3d 759, 761 (2010)

("conclusory affidavit" from agency insufficient to meet burden of invoking exemption).

When some parts of a document may be properly withheld under a claimed exemption, but other

parts are subject to disclosure, the agency must disclose the non-exempt portions, if they can

reasonably be segregated, and redact only the exempt information. *See Wash. Post Co. v. N.Y.

State Ins. Dep't*, 61 N.Y.2d 557, 567 (1984) ("That some portions of the records may be entitled

to exemption does not warrant withholding [them] completely"); *In Re Abdur-Rashid v N.Y.P.D.*,

31 N.Y.3d 217, 242 (2018) ("if an agency establishes that a responsive document contains

protected information, it will be required to prepare a redacted version"); *In Re Schenectady

County Society for Prevention of Cruelty to Animals, Inc. v. Mills*, 18 N.Y.3d 42, 46 (2011)

(agency "cannot refuse to produce the whole record simply because some of it may be exempt

from disclosure").

**III.   Law Enforcement Disciplinary Records Are Presumptively Public (subject to limited redactions when material within them is subject to narrow exemptions recognized under the FOIL).**

Between 1976 and June 12, 2020, New York Civil Rights Law ("CRL") § 50-a barred the release of law enforcement disciplinary records that would otherwise have been accessible under the FOIL's broad presumption of access. *See, e.g., Luongo v. Records Access Officer, Civilian Complaint Review Board*, 150 AD3d 13, 20 (1st Dept. 2017) (noting that each New York intermediate appellate court had found civilian complaints subject to withholding under CRL § 50-a).

On June 12, 2020, New York simultaneously repealed CRL § 50-a and enacted sweeping revisions to the FOIL in order to address concerns about a lack of transparency and accountability related to law enforcement discipline. *See* 2020 NY Session Laws 780-81; Oliver Decl. Exs. 10-11. The resulting changes made all records related to law enforcement disciplinary complaints, investigations, and actual or potential discipline imposed presumptively available under the FOIL, subject to specific, enumerated redactions designed to protect truly private information such as personal phone numbers and addresses, social security numbers, medical information, and the like. *See* FOIL §§ 86(6) through 86(9), 87(4-a), 87(4-b), 89(2-b), and 89(2-c).[10]

Relatedly, in recognition of officers' privacy concerns related to certain information contained in such records, the FOIL now requires the redaction of certain specific information prior to disclosing such records, including medical information, home addresses, personal

---

[10] Of course, "[t]he primary consideration of courts in interpreting a statute" is understanding and enacting the intent of the Legislature, *Riley v. County of Broome*, 95 NY2d 455, 463 (2000) (internal quotes omitted), and "the plain language of the statute … is the clearest indicator of legislative intent." *T-Mobile Ne., LLC v. DeBellis*, 32 NY3d 594, 607 (2018).

telephone numbers, personal cell phone numbers, personal e-mail addresses, social security

numbers, and disclosure of the use of mental health, substance abuse, or other, similar services,

*see* FOIL §§ 87(4-a) and 89(2-b), and permits the withholding and/or redaction of records related

to "minor, technical infractions that do not involve interactions with the public, are not of public

concern, and are not connected to the officer's investigative, enforcement, training, supervision,

or reporting responsibilities," *see* FOIL §§ 86(9), 87(4-b), and 89(2-c).

As a result of the June 12, 2020 amendments, all "law enforcement disciplinary records"

within the meaning of FOIL § 86(6)[11], including records of "law enforcement disciplinary

proceedings" within the meaning of FOIL § 86(7), are now presumptively subject to disclosure

under the FOIL, subject to withholding or redaction where appropriate under a specific FOIL

exemption. *See* FOIL §§ 86(6) and 86(7); *see also, e.g.*, *NYCLU v. Syracuse*, 210 AD3d 1401

(4th Dept. 2022) (ordering broad disclosure of law enforcement disciplinary records related to

open complaints and closed but unsubstantiated complaints, subject to specific redactions, where

demonstrably appropriate); *NYCLU v. Rochester*, 210 AD3d 1400 (4th Dept. 2022) (same);

*NYCLU v. NYC Dept. of Corr.,* 213 AD3d 530 (1st Dept. 2023) (same); *Zhang v. City of New

York*, 2020 WL 1258938, at *1 (NY County Sup. Ct. Nov. 5, 2020) (holding in a discovery

dispute that law enforcement disciplinary records were subject to disclosure in response to FOIL

requests in light of the repeal of CRL § 50-a), *aff'd* 198 AD3d 504, 504 (1st Dept. 2021);

*Schenectady Police Benevolent Assn v. City of Schenectady*, 2020 NY Misc. LEXIS 10947, 2020

---

[11] In pertinent part, FOIL § 86(6) now provides that all "law enforcement disciplinary records" are presumptively subject to disclosure under the FOIL, defining that term as "any record created in furtherance of a law enforcement disciplinary proceeding, including, but not limited to" categories of records beginning with "complaints, allegations, and charges" as well as their name and all documents through "the disposition of any disciplinary proceeding" including – but not limited to - "the final written opinion or memorandum supporting the disposition and discipline imposed including the agency's complete factual findings and its analysis of the conduct and appropriate discipline of the covered employee." FOIL § 86(6)(a) through (e). Relatedly, FOIL § 86(7) defines a "law enforcement disciplinary proceeding" as "the commencement of any investigation and any subsequent hearing or disciplinary action conducted by a law enforcement agency."

NY Slip Op 34346[U], at 8-11 (Sup. Ct., Schenectady County Dec. 29, 2020) ("with the repeal of CRL § 50-a, FOIL requests for law enforcement personnel records are now to be considered in a light that makes them available unless a particular record, or portion thereof, falls within a recently enacted statutory exception or a pre-existing one which the legislature left unaltered"); *Buffalo Police Benevolent Association, Inc. v. Brown*, 69 Misc.3d 998, 1001, 1004 (Sup. Ct., Erie County 2020) (same).

In determining that all law enforcement disciplinary records should be public, with the exception of certain narrow, enumerated redactions that may be made on privacy grounds consistent with FOIL §§ 86(9), 87(2), 87(4-a), 87(4-b), 89(2-b), and 89(2-c), the New York legislature explicitly, and carefully, balanced law enforcement officers' privacy interests in protecting such records from disclosure, including under the exemption in FOIL § 87(2)(b) regarding personal privacy, against the strong public interest in disclosure of such law enforcement personnel and disciplinary records, and determined that continuing the regime of secrecy created by former CRL § 50-a would be "contrary to public policy.*"* See Oliver Decl. Ex. 11 at 2.

The 50-a repeal and related sea change in the FOIL resulted in almost immediate litigation, including in *Uniformed Fire Officers Association v. de Blasio*, 20 Civ. 05441 (KPF) ("*UFOA*"), police and other unions sought to bar the release of police disciplinary records sought through the FOIL. In an August 21, 2020 Decision denying the unions' request for a preliminary injunction, the District Court rejected the unions' arguments that their members would suffer irreparable harm in terms of "[r]eputational harm and loss of privacy" if both substantiated and unsubstantiated law enforcement disciplinary records were released,

> As the city and the state legislature articulated [in repealing 50-a and amending the FOIL] there are strong governmental interests in accountability and

transparency. And the role of police officers in society, the unique responsibilities they carry, the harms they are capable of inflicting on the public, also explain why the City might choose to release records about investigations into allegations of misconduct, but might not proactively release similar records by other city employees, such as teachers or sanitation workers, who do not have similar powers. …

[T]he decision to amend Section 50-a was not made haphazardly. It was designed to promote transparency and accountability, to improve relations between New York's law enforcement communities and their first-responders and the actual communities of people that they serve, to aid law makers in arriving at policy-making decisions, to aid underserved elements of New York's population and ultimately, to better protect the officers themselves. The decision to amend was also made with due regard for the safety and privacy interests of the affected officers. Amendments were made to the Public Officers Law that mandated the redaction of certain categories of information that permitted the withholding of other categories of information.

*See* Oliver Decl. Ex. 12 at 4, 11-16, 34-37, and 41-42, *affirmed*, *Uniformed Fire Officers Association v. de Blasio*, Nos. 20-2789-cv(L), 20-3177-cv(XAP), 2021 U.S. App. LEXIS 4266, at *10-11, 14 (2nd Cir. Feb. 16, 2021) (Summary Order).

Additionally, since the repeal of CRL § 50-a and revisions to the FOIL, other federal courts, aside from the Southern District and Second Circuit in *UFOA*, have also explicitly recognized that police disciplinary records are now presumptively public, with the limited exceptions for truly private information identified in the new FOIL provisions. *See, e.g.*, *Walls v. City of New York*, 402 F.Supp.3d 686, 699 (EDNY 2020) (rejecting Defendants' application for a protective order that would have designated certain entries on CCRB and NYPD disciplinary records confidential, noting that redaction of "limited private police officer information from disclosure" such as "officer social security numbers, home addresses and private member names" would be appropriate); *Mingo v. City of New York*, No. 19-CV-5806 (FB)(VMS), 2020 U.S. Dist. LEXIS 229918, 2020 WL 7085359 (EDNY Dec. 3, 2020) (same); *Casaccia v. City of Rochester*, No. 17-CV-6323 (FPG)(MJP), Dkt. No. 85 (WDNY July 7, 2020) (prohibiting

19

Defendants from marking "any police personnel or disciplinary records, complaints of misconduct, internal investigatory records, or training materials as 'confidential' as such records are now publicly available" and reasoning that "[b]ecause New York Civil Rights Law was repealed . . . the police officer personnel and disciplinary records previously produced by the City Defendants in this case . . . are no longer 'confidential'").

Simply put: "In the balance between the public's right of access and the impact of disclosure upon the officer, the legislature has now made clear that the latter (the impact upon the officer) must bow to the former (the public's right of access)." *Schenectady PBA*, 2020 NY Misc. LEXIS 10947 at *12-14, 17-18

## IV.    New York State and Federal Courts Have Ruled that Law Enforcement Disciplinary Records Cannot Be Uniformly Withheld from Disclosure Based On Personal Privacy Grounds Under FOIL 87(2)(B).

Particularly against that backdrop, and taking into account the principle that "blanket exemptions for particular types of documents are inimical to FOIL's policy of open government," and fail to meet the burden an agency must sustain to withhold records, *Gould*, 89 NY2d at 275, New York appellate courts have consistently rejected attempted invocations of blanket exemptions under FOIL § 87(2) – including, specifically, the personal privacy exemption in FOIL § 87(2)(b)[12] and the so-called inter-/intra-agency deliberative process exemption in FOIL § 87(2)(g)[13] – to justify withholding law enforcement disciplinary records *en masse*,

---

[12] FOIL § 87(2)(b) allows an agency to withhold or redact records or information that "if disclosed would constitute an unwarranted invasion of personal privacy under" FOIL § 89(2). FOIL § 89(2) provides that "[a]n unwarranted invasion of personal privacy includes, but shall not be limited to" seven enumerated categories of records containing specific types of private and/or confidential information. *See also* FOIL § 87(2)(b). Outside of these enumerated categories, an unwarranted invasion of privacy is determined by "balancing competing interests of public access and individual privacy" and finding that the disclosure "would be offensive and objectionable to a reasonable person of ordinary sensibilities." *In Re Thomas v. City of NY Dept. of Hous. Preserv. & Dev.*, 12 Misc 3d 547, 553 (Sup Ct, N.Y. County 2006) (citing cases).

[13] FOIL § 87(2)(g) provides that an agency "may deny access to records or portions thereof that: . . . (g) are inter-agency or intra-agency materials," unless they are "i. statistical or factual tabulations or data; ii. Instructions to staff that affect the public; [or] final agency policy or determinations." The exemption protects only "communications

*[continued]*

requiring instead that agencies seeking to rely on those exemptions "review each record…and determine whether any portion of the specific record is exempt…and, to the extent that any portion…can be disclosed *without* resulting in" disclosure of the exempt material, the agency in question "must release the non-exempt, i.e., properly redacted, portion of the record…." *NYCLU v. Syracuse*, 210 AD3d at 1404, 1407 (neither FOIL §§ 87(2)(b) nor 87(2)(g) "categorically exempt … documents from disclosure"); *accord, NYCLU v. Rochester*, 210 AD3d at 1401; *NYCLU v. NYC Dept. of Corr.,* 213 AD3d at 531[14]; *Schenectady Police Benevolent Ass'n v. City of Schenectady*, 2020 NY Slip Op 34346(U), at *5 (N.Y. Cty. Sup. Ct. 2020) (factual disciplinary records "do not fall within the exception to disclosure for materials that are 'inter-agency or intra-agency'"); *see also Walls*, 502 F.Supp.3d at 698 (federal deliberative process privilege does not preclude the disclosure of documents concerning internal police investigations).

## V. New York Courts Have Ordered the NYPD And CCRB to Disclose the Same Types of Records at Issue in this Application.

Beyond the cases cited above, New York courts have ordered the NYPD and CCRB to produce the same types of records at issue in this application.[15] *See, e.g., NYP Holdings v.*

---

exchanged for discussion purposes not constituting final policy decisions," *Russo v. Nassau County Community Col.*, 81 NY2d 690, 699 (1993), and, as seen above, explicitly does not apply to, among other things, "factual" data or "final agency policy or determinations, which are categorically subject to disclosure, *see, e.g., Gould*, 89 NY2d at 276 ("intra-agency documents that contain 'statistical or factual tabulations or data' are subject to FOIL disclosure, whether or not embodied in a final agency policy or determination"). To the extent that such inter-agency or intra-agency materials contain both factual data (or other information subject to disclosure) and materials that may be withheld as non-final opinion, those materials "should be redacted and made available…." *Xerox Corp. v. Town of Webster*, 65 N.Y.2d 131, 133 (1985).

[14] Notably, although this Court is not so bound, because the 1st and 4th Departments have ruled on these issues in *NYCLU v. Syracuse* and *NYCLU v. NYCDOC*, without conflicting precedent, New York courts in other judicial departments are bound to follow. *Mountain View Coach Lines, Inc. v. Storms*, 102 AD2d 663 (2nd Dept. 1983); *McDevitt v. Suffolk County*, 78 Misc.3d 1239[A], 2023 NY Slip Op 50486[I] (Sup. Ct., Suffolk County 2023); *NYP Holdings, Inc. v. New York City Police Department*, 77 Misc.3d 1211][A], 2022 NY Sip Op 51191[U], *4 (Sup. Ct., NY County 2022) ("Aside from the fact that it is binding on this Court, the *[NYCLU v. Syracuse]* decision employs a straightforward application of the law"); *PBA of the NY State Troopers v. Hochul,* Index No. 907274-21 (Sup. Ct., Albany County, Nov. 23, 2022 (same).

[15] ████████████████████████████████████████████████████

*NYPD,* 77 Misc. 3d 1211(A), 178 N.Y.S.3d 427 (Sup. Ct. NY County 2022) (ordering production of full NYPD Internal Affairs Bureau files for "substantiated and unsubstantiated claims, regardless of date or retirement status, against . . . 144 named police officers"), and *Legal Aid Society v. NYPD,* No. 153748/2022, 2023 WL 3021949, at *2 (Sup. Ct. NY County Apr. 19, 2023) (ordering NYPD to produce "IAB case logs and case closing worksheets for unsubstantiated allegations" in certain categories of investigations "from January 1, 2018 to present"), *Rickner PLLC v. City of New York*, 2022 NY Misc. LEXIS 2233 (Sup. Ct. NY Co. May 25, 2022) (ordering NYPD to release full IAB records).

The Court of Appeals has defined the sort of "factual data" contemplated in FOIL § 87(2)(g) as "objective information, in contrast to opinions, ideas, or advice exchanged as part of the consultative or deliberative process of government decision making." *Gould*, 89 N.Y.2d at 276–7. Recordings of complainant, suspect, and witness interviews and communications, other underlying evidence gathered in a law enforcement disciplinary investigation, and logs of investigative actions taken, are just the sort of non-opinion "factual data" that are subject to disclosure under the FOIL and that are "far removed from the type of internal government exchange sought to be protected by the intra-agency exemption." *See, e.g., Gould*, 89 NY2d at 276–7 (ordering disclosure of NYPD documents reflecting witness statements and particulars of actions taken in connection with police investigation on those grounds); *see also, e.g., Matter of Johnson v. New York City Police Dept.,* 257 AD2d 343 (1st Dept. 1999), *lv dismissed,* 97 NY2d 971 (1999).

Beyond that, of course, closing reports and worksheets are not only among the types of records that are explicitly subject to disclosure under post-50-a-repeal FOIL § 86(6)(e) (requiring disclosure of "the final written opinion or memorandum supporting the disposition and discipline

imposed including the agency's complete factual findings and its analysis of the conduct and appropriate discipline of the covered employee"), but also "final agency policy and determinations" subject to disclosure under FOIL § 87(2)(g)(iii) even if the records in question would otherwise fall under the FOIL § 87(2)(g) exemption more generally.

**VI.   Because Defendants' Position is not Substantially Justified, the Court Should Award Mandatory Attorneys' Fees.**

Rule 37 provides, in mandatory terms that when a discovery motion like this one is granted, "the court **must** . . . award reasonable motion expenses incurred in making the motion,'" except in certain limited circumstances. *Underdog Trucking, LLC v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (quoting Fed. R. Civ. P. 37) (emphasis added in *Underdog*). Relevantly here, Defendants must show not just some justification, but that their "objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii). "The mandatory nature of the imposition of expenses reflects a policy choice aimed at reducing the burden on the courts by deterring parties … from resisting discovery without justification" and therefore "[t]his standard requires only an inquiry as to 'an objective test of reasonableness' and not as to whether the party or counsel acted 'in good faith.'" *Jackson v. Nassau Cnty.*, No. 18-CV-3007, 2022 U.S. Dist. LEXIS 83333, at *4–5 (E.D.N.Y. May 9, 2022) (cleaned up).

This case is a posterchild for that "policy choice." As noted above, the parties litigated twice over the scope of what should be designated confidential. Defendants wanted to be able to blanket-designate all NYPD disciplinary records; Plaintiff wanted Defendants to — at a minimum — have to disclose those records that were already presumptively public under FOIL. After two rounds of papers, the Court's gloss on the proposed order made the standard clear (using mandatory language, no less):  "documents and information ***shall not*** be designated 'Confidential Materials' to the extent that they are otherwise publicly available," and "otherwise

publicly available ***shall include*** documents … ***potentially*** available to the public under FOIL." Dkt. No 60-1 ¶ 2; June 5, 2023 Minute Order (emphasis added).

Document-wise, Defendants began on a bad foot with having "produced [only] 100 pages of documents at [a relatively late] stage of the case." Tr. at 3:23-4:12. But Defendants also said then (that is, on May 30) that they were "prepared, within ten days, to produce responsive documents following the entry of the confidentiality stipulation." *Id.* at 4:13-18. But what Defendants produced just under 10 days later required Plaintiff to agree to a temporary, blanket designation to get out the door — and did not have Bates numbering, a privilege log, or other hallmarks of a formal production.

All of that would have been fine if, ultimately, Defendants came to the table with a commitment to sincerely — as the Court said they "shall" — evaluate what was ***potentially*** available under FOIL. Instead, however, Defendants simply stalled. Defendants did not respond in any way at all for more than 50 days. Defendants' ultimate substantive response reflects the initial position that the Court rejected: ███████████████████████████ ████████████████████ — and only de-designated documents, like a 311 policy, that are already "currently available" to the public. Indeed, Defendants' response indicates that thinking exactly, asking, "If there are any documents designated as Confidential which you have received from a FOIL request, please promptly so advise." Perhaps, had Defendants taken the requirement to evaluate what was "potentially" available under FOIL and agreed to disclose the large share of what is at issue that is plainly available under FOIL,[16] compromise would have allowed the Court to avoid this application. Instead, Defendants forced litigation.

---

[16] Indeed, in referencing that "[a] number of courts have found [that] under [the repeal] of section 50(a)" when the Court asked whether there was law the Plaintiff "could get [the disciplinary records] through" already, Defendants' counsel appears to have recognized that the bulk of the records at issue are available under FOIL, and simply asserted it was "not everything" that was available. Tr. at 4:21-5:25.

24

Whoa

Defendants' position may be consonant with what they wish the Court ordered, but it is not with what the Court in fact ordered. 

. [17]  Likewise,

. These positions are not justified — let alone substantially justified, which is what is required. The Court should award mandatory fees under Rule 37.

---

[17] And, as noted above. Plaintiff have no objection to reasonable FOIL redactions to things like home addresses. *Accord, Walls,* 502 F.Supp.3d at 699 (allowing such redactions; rejecting any confidentiality for disciplinary records).

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that the Court grant the relief set out in the

notice of motion in full.

DATED:          October 16, 2023
               Brooklyn, New York


                              _____/s/_____
                              Gideon Orion Oliver
                              277 Broadway, Suite 1501
                              New York, NY  10007
                              Gideon@GideonLaw.com
                              (718) 783-3682

                              J. Remy Green
                              **COHEN&GREEN P.L.L.C.**
                              1639 Centre St., Suite 216
                              Ridgewood, New York 11385
                              Remy@FemmeLaw.com
                              (929) 888-9480



---

[18] Because of the format in which Defendants produced the documents, there are not Bates numbers or other identifying marks other than the file names. Where it is clear, the agency that was the custodian of the relevant document is indicated in headings.
[19] While this document falls under multiple headings, it is only listed once. Plaintiff does the same for other documents that contain multiple kinds of records.



[20] On October 10, Defendants withdrew the designation as to solely the call with Mr. Sherwood, ███████████

44544454454545555555555555555555555555555555555555555555555555555555



A3



A4

